**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HOUNEN SOLAR, INC, a California corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: |
| vs. | ) ) | |
| UL LLC, a Delaware corporation, | ) ) | |
| Defendant. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, HOUNEN SOLAR, INC., a California corporation ("Hounen"), by and through its attorneys RKF Global PLLC, and in support of its Complaint against Defendant UL LLC, a Delaware corporation ("UL" or "Defendant"), states as follows:

**JURY TRIAL**

1.   Plaintiff requests a trial by jury on all issues properly triable.

**JURISDICTION AND VENUE**

2.   This Court has jurisdiction over Defendant based on 28 U.S.C. § 1332(a)(1) because, upon information and belief, there is complete diversity of citizenship between the parties, and the matter in controversy exceeds the sum or value of $75,000. Upon information and belief, there are no individual members of any corporate entity that would destroy jurisdiction based upon a diversity of citizenship between the parties.

3.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant maintains its principal place of business, and therefore resides, in the Northern District of Illinois.

1

## PARTIES AND RELEVANT COMPANIES

4.      Hounen Solar, Inc. is a California corporation with its principal place of business located at 4010 Valley BLVD., Suite 104, Walnut, California 91789. Hounen is a solar module distributor that contracts with solar module manufacturers and sells solar modules to its customers.

5.      DA CHUAN INVESTMENT (CAMBODIA) CO., LTD, a Cambodian corporation ("Da Chuan") was during all relevant times a licensed manufacturer of ReneSola Modules (defined below) and owns the manufacturing facility in Cambodia where the solar modules at issue in this Complaint were manufactured (the "Manufacturing Facility"). Da Chuan is also the exporter of the solar modules at issue.

6.      UL is a Delaware corporation with its principal place of business located at 333 Pfingsten Road, Northbrook, Illinois 60062. According to its website and other published materials, UL is a private company that reviews, tests, and/or inspects products to make sure that those products comply with safety codes, international standards, and any other international, local, or domestic standards. Per its stated business model, once UL completes product testing and/or inspection, it promises to determine whether those products meet the applicable codes and regulations, and if so, issues approval in the form of a UL moniker (the "UL Mark"). The UL Mark is intended to signify approval or certification by UL that the products affixed with the UL Mark have met whatever standards apply to that product and are certified by UL for the importation of those products into other countries. UL's licensing standards are dictated pursuant to a private contract between UL and its customers with varying terms that UL may choose to apply, or not.

7.      ReneSola Yixing Co., LTD ("ReneSola") owns and licenses ReneSola branded solar modules to be manufactured by third parties (the "RenaSola Modules").

8.     Endepo, Inc. ("Endepo") is a business located in the United States that facilitates transactions between foreign suppliers of goods and purchasers of those goods in the United States.

9.     Zhejiang Houfi New Energy Technology Co., Ltd. ("Houfi") is a third-party representative of Da Chuan which helped facilitate the certification project at issue in this complaint (described below) with UL. Houfi is the Chinese agent of Da Chuan.

10.     DEKRA Testing and Certification (Shanghai) Ltd. ("Dekra") is a product testing company that, upon information and belief, is a third-party representative of UL.

## FACTUAL BACKGROUND

11.     In or around October of 2019, Hounen began negotiations with Endepo for the sale of solar modules to Endepo. During the period in which the terms of this transaction were being negotiated, Endepo lined up certain buyers in the United States in need of the subject solar modules, and Hounen and Endepo sought to effectuate the production and purchase of certain specific ReneSola Modules for Endepo's end-buyer in the United States; specifically, a commercial utility project located in North Carolina (the "North Carolina Project").

12.     For insurance and other reasons, many large companies and purchasers require UL certification (or some equivalent of UL certification) safety standards for solar panels to be imported into, and for use in, those countries.

13.     Endepo and Hounen therefore agreed that the ReneSola Modules would require third party certification. Endepo and Hounen further agreed that the ReneSola Modules would be delivered to the North Carolina Project between March 10, 2020 and April 15, 2020 (hereinafter the "Delivery Timeline").

14.     Hounen and Endepo next contacted Da Chuan, the owner of the Manufacturing Facility located in Cambodia. Hounen, Endepo, and Da Chuan agreed that the solar modules for the North Carolina Project would be manufactured at the Manufacturing Facility.

15.     Typically, the amount of time necessary for shipping products from Cambodia to the United States is approximately forty-five (45) days. Accordingly, the solar modules produced at the Manufacturing Facility were scheduled to be manufactured and shipped in eight shipments, depending on when the modules were to be completed.

16.     Endepo and Hounen agreed on a total purchase price, as well as other material terms of the transaction for the provision of the solar modules to the North Carolina Project, but resolved to hold off on issuing a purchase order until all details were arranged and finalized with other necessary participants in the transaction, such as ReneSola (the owner of the ReneSola brand), Da Chuan, the owner of the Manufacturing Facility, and UL.

17.     In or around October of 2019, Endepo agreed to purchase the solar modules from Hounen, and Hounen began taking all preliminary steps to effectuate the sale of the ReneSola Modules by Endepo so that the modules would be delivered to the North Carolina Project by the Delivery Timeline.

18.     Hounen (the contracting party with Endepo), ReneSola (the owner of the ReneSola brand whose name would appear in any certification contract), and Da Chuan (the owner of the Manufacturing Facility) were in frequent communication around this period of time to discuss the specific details of the project, as well as the role each party would play in effectuating the manufacture, certification and shipment of the solar modules.

4

19.     Pursuant to a manufacturing license agreement, ReneSola agreed that Da Chuan was authorized to manufacture the ReneSola Modules, and Da Chuan agreed to manufacture the ReneSola Modules at the Manufacturing Facility.

20.     ReneSola, Da Chuan, and Hounen agreed, that since UL is one of the well-known private company providers of U.S. safety certifications, the parties to the transaction could hire UL to provide a safety certification in connection with the modules, as such UL certification would meet the end-customer's module safety certification requirements.

21.     On a date prior to November 27, 2019, Hounen representative Jufang "Lisa" Lv ("Lisa") contacted UL representative LV Yongbin, a/k/a "Alex" ("Yongbin"), to discuss the details of this project and the Delivery Timeline.

22.     A meeting was held on November 27, 2019, in China at the offices of Houfi to discuss the purchase of the ReneSola Modules for the North Carolina Project (the "November Meeting").

**The November Meeting**

23.     Present at the November Meeting were representatives from UL, Hounen, Da Chuan, Houfi, and Dekra. The representatives in attendance at the November Meeting included Lisa on behalf of Hounen, Yongbin on behalf of UL, Jiabing Chen (Houfi's CEO) on behalf of Haofi, Li Zhengyong on behalf of Da Chuan, and Xu Liang on behalf of Dekra.

24.     All persons in attendance, were present in their official capacities as representatives of their respective employer or principal.

25.     The purpose of the November Meeting was to determine whether UL would act as the third-party inspector of the ReneSola Modules. Specifically at issue was whether UL's role would affect the Delivery Timeline for the North Carolina Project.

26.     Lisa (Hounen) informed UL representative Yongbin of all details of Hounen's prior discussions and negotiations with Endepo. Specifically, Lisa told Yongbin that Hounen had a buyer for ReneSola Modules in the United States and that those modules must be delivered by the Delivery Timeline.

27.     Lisa told Yongbin that UL must be able to meet the Delivery Timeline if this transaction was going to be successful. In response, Yongbin stated that UL guaranteed that it would provide authorization in time to meet the Delivery Timeline.

28.     Lisa then asked Yongbin if the ReneSola Modules could still be delivered to the United States if UL certification was not issued by the time the modules were set to arrive in the United States.

29.     Yongbin responded by telling Lisa and Da Chuan representative Li Zhengyong that, if the UL certification process was underway and ongoing (as opposed to being completed), then Da Chuan could ship the ReneSola Modules without customs concerns. He explained that UL would provide a "declaration" which confirmed that the UL certification process was ongoing, and that such declaration would address any concerns which United States Customs and Border Patrol ("CBP") might have. Yongbin stated the "declaration" would be an official UL document confirming the right for the ReneSola Modules to clear CBP inspection.

30.     Based on the statements made by Yongbin at the November Meeting, Hounen and Da Chuan reasonably believed that a declaration from UL that the UL certification process was ongoing would allow the modules to be imported into the United States.

31.     Lisa further told Yongbin that Hounen agreed to use UL as the third-party inspector based on UL's representations that it could meet the Delivery Timeline. The parties agreed that

Houfi, as a representative of Da Chuan, would sign the agreement with Dekra, who would act as a middle person for UL for purposes of facilitating the certification of the North Carolina Modules.

32.     The discussions had and the agreements made at the November Meeting confirmed the role that each party would play in manufacturing the ReneSola Modules for the North Carolina Project. ReneSola (not in attendance at the November Meeting) was to, pursuant to a manufacturing license agreement with Da Chuan, grant Da Chuan a license to use ReneSola's trademarks in connection with the manufacture of solar modules and authorize Da Chuan to manufacture the modules in accordance with its (Renesola's) specifications and then sell them as ReneSola brand modules. Houfi would sign the certification agreement with UL as a Chinese representative of Da Chuan, Dekra would sign the certification agreement with Houfi as a representative of UL, Da Chuan would manufacture the ReneSola Modules, UL would authorize Da Chuan's use of the UL Mark, and Hounen would sell the ReneSola Modules to Endepo and ship them in order that they would arrive at the North Carolina Project in accord with the Delivery Timeline.

33.     UL certification is a process internally controlled by UL and not governed by statute. For that, among other reasons, Hounen and Da Chuan reasonably relied on the directive from UL representative Yongbin that Da Chuan was specifically authorized to use the UL mark and affix the mark to the ReneSola Modules which were to be shipped to the United States prior to the completion UL's internal approval process.

34.     Based on the representations made and trademark use authorization given by UL at the November Meeting, Da Chuan, Hounen, and ReneSola executed the necessary documents for the production of the ReneSola Modules for the North Carolina Project.

35.     On December 5, 2019, Houfi (as an agent of Da Chuan) signed a certification service contract with Dekra (No. SAM/7406740), for the provision of several safety certifications ("Standards"), including UL61730/IEC61215/IEC61730/CEC listing certifications, for various full monocrystal and half monocrystal (158.75 covering 156.75) solar module products, with a total contractual service fee of RMB 750,000 (USD $111,683.62). (December 5, 2019 certification agreement attached as Exhibit 1).

36.     On December 6, 2019, Houfi paid the initial certification service fees of RMB 300,000 ($44,571.22 USD) and applied for safety certifications of the ReneSola Modules, as manufactured by Da Chuan and for the use of the North Carolina Project. (*See id.*).

37.     On December 13, 2019, Houfi executed an agreement with UL for certification of the ReneSola Modules. (December 13, 2019 agreement attached as Exhibit 2).

38.     On December 23, 2019, Da Chuan representative Li Zhengyong, confirmed with Guo Min (the ReneSola representative in charge of ReneSola's certification business) that ReneSola had previously initiated a separate UL certification process (in its own name) for certification of the same monocrystalline modules; so, in order to speed up the process of certification of the ReneSola Modules, ReneSola confirmed with Da Chuan that the monocrystalline products that would be manufactured there would be included in ReneSola's certification program with the Manufacturing Facility listed as a factory for certification. (The "Second Application" attached as Exhibit 3).

39.     The Second Application was made based on ReneSola's belief that the certification process would proceed more quickly if ReneSola was the applicant, since ReneSola was also the owner of the ReneSola Modules. Hounen was informed about this application change.

40.     The first purchase contract (the "First PO") was executed between Hounen and Endepo on or around December 28, 2019. The First PO was for "Renesola brand" "[m]ono-crystalline [s]olar modules 370wp" for a total purchase price of $1,853,996.40. (*See* Exhibit 4). The First PO further states the delivery point is the North Carolina Project and that delivery will occur no later than March 10, 2020.[1]

41.     The second purchase contract (the "Second PO") was executed between Hounen and Endepo on or around January 15, 2019. The Second PO was for "Renesola brand" "[m]ono-crystalline [s]olar modules 370wp" for a total purchase price of $2,330,040.96. *(See* Exhibit 5).

42.     Per the terms agreed to and the trademark use authorization provided by UL at the November Meeting, the ReneSola Modules were scheduled to be manufactured at the Manufacturing Facility and then shipped to the United States while the UL certification process was ongoing.

43.     As of December 5, 2019, the UL certification process for the ReneSola Modules was ongoing. (*See* Exhibit 1).

44.     Hounen executed the First PO and Second PO in reasonable reliance on the representations made by UL at the November Meeting in Houfi's office in China.

45.     Da Chuan began production of the ReneSola Modules in January 2020. Da Chuan manufactured and shipped the ReneSola Modules based on the information and instruction which UL representative Yongbin provided at the November Meeting.

46.     On January 3, 2020, Da Chuan asked ReneSola for the UL Mark to affix to the modules.

---

[1] The First PO uses the European format for expressing dates of delivery, i.e., day/month/year as opposed to the version commonly used in the United States of month/day/year.

47. On January 6, 2020, Guo Min (ReneSola) sent Da Chuan the UL Mark that ReneSola received directly from a UL engineer. (WeChat messages attached as Exhibit 6).

48. Da Chuan and Hounen were in regular communication with UL and ReneSola during the time period during which the ReneSola Modules were manufactured and shipped, and both Da Chuan and Hounen operated based on the instructions given by UL.

49. On or around February 9, 2020, Da Chuan shipped the first batch of ReneSola Modules to the United States, as it was instructed to by UL at the November Meeting (the "First Shipment"). On February 13, 2020, after the first shipment was made, Da Chuan requested that UL provide a Declaration.

50. Da Chuan and Hounen reasonably relied on UL's statements that the ReneSola Modules could be shipped to the United States as long as the UL certification process was ongoing, and if it was not complete, a "declaration" would suffice for customs purposes.

51. Since the seizure of the ReneSola Modules (described in detail below), UL has stated that its policy is that a product cannot be affixed with a UL Mark or shipped until after factory and product testing have been completed; at which time the product is entered into UL's internal database – which can be viewed by CBP – such that CBP would allow that product affixed with the UL Mark to clear customs.

52. UL's claimed policy is in contrast with Yongbin's claims and expressions at the November Meeting – that the modules could be shipped to the United States as long as the UL certification process was ongoing.

53. On or around February 25, 2020, before the First Shipment reached the United States, Yongbin sent Da Chuan a "declaration" from UL that states that the "UL certificate project…is ongoing" (the "UL Declaration"). (UL Declaration attached as Exhibit 7). The UL

Declaration was consistent with the timeline and representations made by Yongbin at the November Meeting.

54.     Prior to the First Shipment, UL had already sent the UL Mark to ReneSola, which ReneSola then sent to Da Chuan, which Da Chuan affixed to the North Carolina Modules in all shipments *before* shipping them to the United States, according to and consistent with Yongbin's instructions and representations at the November Meeting. (*See* Exhibit 6).

55.     In February 2020, Da Chuan representatives and ReneSola representatives communicated that the certification schedule was affected by the COVID-19 pandemic. Given the broad scope of the application (the application included many different products), in order to timely complete the certification of ReneSola Modules as soon as possible, and at the suggestion of Yongbin, another certification program was opened separately for the ReneSola Modules in March 2020.

56.     Upon information and belief, it is common practice for UL customers to mark their products with the UL Mark *before* formal authorization is granted by UL. Based on the information provided by Yongbin at the November Meeting, Da Chuan affixed the UL Mark to the ReneSola Modules before the certification process had been completed and before any of the modules were shipped.

57.     Hounen and Da Chuan reasonably believed Da Chuan was authorized by UL to apply the UL Mark to the ReneSola Modules prior to shipping since: 1) Yongbin stated at the November Meeting that the ReneSola Modules could be shipped as long as the UL process was ongoing; 2) the UL process was ongoing; 3) the UL Declaration confirmed the UL process was ongoing.

58. Da Chuan made the following shipments in accordance with UL's instructions; all identified shipments were seized by CBP once those shipments arrived in the United States:

| CBP Case | Domestic Value | 10% Remittance Due to CBP | Retail Value | Date of Arrival | Date of Seizure | # Modules |
|---|---|---|---|---|---|---|
| 2020-1401-000104-01 | $510,700.05 | $51,070.01 | $785,880.00 | March 26, 2020 | May 6, 2020 | 2,832 |
| 2020-1401-000105-01 | $638,209.73 | $63,820.97 | $982,350.00 | April 11, 2020 | May 11, 2020 | 3,450 |
| 2020-1401-000125-01 | $1,148,248.47 | $114,824.84 | $1,687,925.25 | April 16, 2020 | June 4, 2020 | 6,372 |
| 2020-1401-000126-01 | $743,217.71 | $74,321.77 | $1,178,820.00 | May 14, 2020 | June 4, 2020 | 4,248 |
| 2020-1401-000142-01 | $248,180.11 | $24,818.01 | $392,940.00 | May 21, 2020 | June 29, 2020 | 1,416 |
| 2020-1401-000144-01 | $564,920.27 | $56,492.03 | $895,770.00 | May 31, 2020 | June 30, 2020 | 3,228 |

| 2020-1401-000145-01 | $495,498.91 | $49,569.89 | $785,880 | May 29, 2020 | July 2, 2020 | 2,832 |
| 2020-1703-000059-01 | $734,451.98 | $73,445.18 | $1,114,256.25 | May 31, 2020 | July 7, 2020 | 4,185 |

(Seizure notices attached as Exhibit 8). (The ReneSola Modules listed in the above chart, and which were seized by CBP, are hereinafter referred to as the "Seized Modules").

### *CBP Case No. 2020-1401-000104-01*

59.     On March 25, 2020, the modules contained in the shipment that is the subject of CBP Case No. 2020-1401-000104-01 were targeted by CBP for examination. (*See* CBP Decision attached as Exhibit 9).

60.     On April 7, 2020, CBP suspected the shipment contained "solar modules…determined to bear suspect [UL Mark] (recorded with [CBP] under recordation number TMK 05-00236 and registered with the U.S. Patent and Trademark Office ('USPTO') under registration number 782,589).

61.     On April 10, 2020, CBP detained the shipment.

62.     On April 15, 2020, redacted photos of the solar modules in this shipment were sent to the "UL anti-counterfeiting team for verification" (the "UL Team").

63.     On April 17, 2020, UL stated to CBP that it was "highly suspicious of the product's authenticity to bear the UL Mark."

64.     On April 21, 2020, CBP sent unredacted photos of the solar modules in this shipment to UL.

65.     On April 22, 2020, a UL representative "sent a letter to CBP stating that the UL marks on these goods are 'not authorized…' and that UL 'will not consent to the importation, exportation, obliteration, or removal of unauthorized UL Marks on products or packaging.'" (*Id*).

66.     On April 24, 2020, CBP sent the Declaration to the UL Team.

67.     On April 30, 2020, UL responded to CBP that "the documents, manufacturer and file number could not be found in the UL databases."

68.     On May 5, 2020, CBP completed its examination of the containers.

69.     On May 6, 2020, CBP seized containers that are the subject of CBP Case No. 2020-1401-000104-01 "under 19 U.S.C. § 1526(e) for bearing counterfeit marks."

70.     On June 29, 2020, CBP sent Hounen a notice of seizure for these containers. (*See* Exhibit 9).

71.     UL knew it made a false statement to CBP when it stated that the Seized Modules with UL marks are "'not authorized'…and that UL 'will not consent to the importation, exportation, obliteration, or removal of unauthorized UL Marks on products or packaging.'"

### *CBP Case No. 2020-1401-000105-01*

72.     On April 2, 2020, the modules contained in the shipment that is the subject of CBP Case No. 2020-1401-000105-01 were targeted by CBP for examination. (*See* Exhibit 9).

73.     On April 23, 2020, "[u]pon inspection…the solar modules were found to bear suspect 'UL' marks."

74.     On April 24, 2020, CBP detained the shipment, and redacted photos of the solar modules in this shipment were sent to the UL Team.

75.     On May 5, 2020, CBP sent unredacted photos of the solar modules in this shipment to UL.

76. On May 6, 2020, "a UL representative sent a letter to CBP including very similar language to that of the April 22, 2020 letter mentioned above, indicating that this merchandise was not authorized to bear the protected marks and that UL does not consent to removal of the marks." (*Id*).

77. On May 8, 2020, CBP completed its examination of the containers.

78. On May 11, 2020, CBP seized containers under CBP Case No. 2020-1401-000105-01 "under 19 U.S.C. § 1526(e) for bearing counterfeit marks."

79. On June 29, 2020, CBP sent Hounen a notice of seizure for these containers. (*See* Exhibit 8).

80. UL knew it made a false statement to CBP when it stated that the Seized Modules were "not authorized to bear the protected marks and that UL does not consent to removal of the marks."

### CBP Case No. 2020-1401-000125-01

81. On April 16, 2020, the modules contained in the shipment that is the subject of CBP Case No. 2020-1401-000125-01 were targeted by CBP for examination. (*See* Exhibit 9).

82. On May 14, 2020, "[u]pon inspection…the solar modules were found to bear suspect 'UL' marks."

83. On May 15, 2020, CBP detained the shipment.

84. On May 27, 2020, CBP sent unredacted photos of the solar modules in this shipment to the UL Team.

85. On May 27, 2020, CBP also completed its examination of the containers.

86. On May 28, 2020, "a UL representative sent a letter to CBP including very similar language to that of the April 22, 2020, letter mentioned above, indicating that this merchandise

was not authorized to bear the protected marks and that UL does not consent to removal of the marks." (*Id*).

87.     On June 2, 2020, CBP seized containers under CBP Case No. 2020-1401-000125-01 "pursuant to 19 U.S.C. § 1526(e) for bearing counterfeit UL marks."

88.     On July 8, 2020, CBP sent Hounen a notice of seizure for these containers. (*See* Exhibit 8).

89.     UL knew it made a false statement to CBP when it stated that the Seized Modules were "not authorized to bear the protected marks and that UL does not consent to removal of the marks."

### CBP Case No. 2020-1401-000126-01

90.     On April 23, 2020, the modules contained in the shipment that is the subject of CBP Case No. 2020-1401-000126-01 were targeted by CBP for examination. (*See* Exhibit 9).

91.     On May 20, 2020, "[u]pon inspection…the solar modules were found to bear suspect 'UL' marks."

92.     On May 20, 2020, CBP detained the shipment.

93.     On June 1, 2020, CBP sent unredacted photos of the solar modules in this shipment to the UL Team.

94.     On June 2, 2020, "a UL representative sent a letter to CBP including very similar language to that of the April 22, 2020, letter mentioned above, indicating that this merchandise was not authorized to bear the protected marks and that UL does not consent to removal of the marks." (*Id*).

95.     On June 3, 2020, CBP completed its examination of the containers.

96.     On June 4, 2020, CBP seized containers under CBP Case No. 2020-1401-000126-01 "under 19 U.S.C. § 1526(e) for bearing counterfeit marks."

97.     On July 8, 2020, CBP sent Hounen a notice of seizure for these containers. (*See* Exhibit 8).

98.      UL knew it made a false statement to CBP when it stated that the Seized Modules were "not authorized to bear the protected marks and that UL does not consent to removal of the marks."

### *CBP Case No. 2020-1401-000142-01*

99.     On May 5, 2020, the modules contained in the shipment that is the subject of CPB Case No. 2020-1401-000142-01 were targeted by CBP for examination. (*See* Exhibit 9).

100.    On June 3, 2020, "[u]pon inspection…the solar modules were found to bear suspect 'UL' marks."

101.    On June 3, 2020, CBP detained the shipment.

102.    On June 12, 2020, CBP sent unredacted photos of the solar modules in this shipment to the UL Team.

103.    On June 15, 2020, "a UL representative sent a letter to CBP including very similar language to that of the April 22, 2020, letter mentioned above, indicating that this merchandise was not authorized to bear the protected marks and that UL does not consent to removal of the marks." (*Id*).

104.    On June 11, 2020, CBP completed its examination of the containers.

105.    On June 29, 2020, CBP seized containers under CBP Case No. 2020-1401-000142-01 "pursuant to 19 U.S.C. § 1526(e) for bearing counterfeit marks."

106. On July 22, 2020, CBP sent Hounen a notice of seizure for these containers. (*See* Exhibit 8).

107. UL knew it made a false statement to CBP when it stated that the Seized Modules were "not authorized to bear the protected marks and that UL does not consent to removal of the marks."

### CBP Case No. 2020-1401-000144-01

108. On May 5, 2020, the modules contained in the shipment that is the subject of CBP Case No. 2020-1401-000144-01 were targeted by CBP for examination "due to recent intellectual property rights ("IPR") violations." (*See* Exhibit 9).

109. On June 9, 2020, "[u]pon inspection…the solar modules were found to bear suspect 'UL' marks."

110. On June 9, 2020, CBP completed its examination of the containers.

111. On June 11, 2020, CBP detained this shipment.

112. On June 19, 2020, CBP sent unredacted photos of the solar modules in this shipment to the UL Team.

113. On June 22, 2020, "a UL representative sent a letter to CBP including very similar language to that of the April 22, 2020, letter mentioned above, indicating that this merchandise was not authorized to bear the protected marks and that UL does not consent to removal of the marks." (*Id*).

114. On June 30, 2020, CBP seized containers under CBP Case No. 2020-1401-000144-01 "pursuant to 19 U.S.C. § 1526(e) for bearing counterfeit marks."

115. On July 22, 2020, CBP sent Hounen a notice of seizure for these containers. (*See* Exhibit 8).

116. UL knew it made a false statement to CBP when it stated that the Seized Modules were "not authorized to bear the protected marks and that UL does not consent to removal of the marks."

### CBP Case No. 2020-1401-000145-01

117. On May 6, 2020, the modules contained in the shipment that is the subject of CBP Case No. 2020-1401-000145-01 were targeted by CBP for examination "due to recent IPR violations." (*See* Exhibit 9).

118. On June 15, 2020, "[u]pon inspection…the solar modules were found to bear suspect 'UL' marks."

119. On June 15, 2020, CBP completed its examination of the containers.

120. On June 15, 2020, CBP detained the shipment.

121. On June 26, 2020, CBP sent unredacted photos of the solar modules in this shipment to the UL Team.

122. On June 29, 2020, "a UL representative sent a letter to CBP including very similar language to that of the April 22, 2020, letter mentioned above, indicating that this merchandise was not authorized to bear the protected marks and that UL does not consent to removal of the marks." (*Id*).

123. On July 2, 2020, CBP seized containers under CBP Case No. 2020-1401-000145-01 "under 19 U.S.C. § 1526(e) for bearing counterfeit marks."

124. On July 22, 2020, CBP sent Hounen a notice of seizure for these containers. (*See* Exhibit 8).

125. UL knew it made a false statement to CBP when it stated that the Seized Modules were "not authorized to bear the protected marks and that UL does not consent to removal of the marks."

### CBP Case No. 2020-1703-000059-01

126. On May 31, 2020, CBP prepared an entry summary for this shipment. (*See* Exhibit 9).

127. On June 8, 2020, this shipment arrived at the Port of Savannah, Georgia, and was placed on hold.

128. On June 12, 2020, CBP completed its examination of the containers and "found 4,185 'E-GOOD SOLAR MODULES' (142 cartons) with potential violations of the 'UL Circle' trademark owned by UL."

129. On June 12, 2020, CBP detained the shipment.

130. On June 24, 2020, CBP emailed a UL representative "requesting UL's assistance in determining whether the detained merchandise bears counterfeit marks…and requested that the UL representative respond as to whether the suspect marks were applied with their authorization, and the email requested that the representative articulate any differences between the suspect mark and the authorized mark." (*Id*).

131. On June 24, 2020, UL issued "official letter #202000660 to CBP stating that the UL Listing Mark on model #JC370S-24/Abpw solar panel is not authorized."

132. On July 7, 2020, CBP seized containers under CBP Case No. 2020-1703-000059-01 "under the provisions of 19 U.S.C. § 1526(e) which prohibits the importation of merchandise bearing a counterfeit trademark…" CBP described the "counterfeit trademark" as the UL Mark.

133.    On July 15, 2020, CBP sent Hounen a notice of seizure for these containers. (*See* Exhibit 8).

134.    UL knew it made a false statement to CBP when it stated that the Seized Modules were "not authorized to bear the protected marks and that UL does not consent to removal of the marks."

**UL Conduct Around Time of Seizure**

135.    When CBP seized the Seized Modules, CBP stated that it required proof of authorization to use the UL Mark. Hounen provided CBP with the UL Declaration, as instructed by UL; however, CBP could not determine from that document alone whether the use of the UL Mark was authorized. The UL Declaration was rejected by CBP as proof of authorization to use the UL Mark, following which Da Chuan and Hounen immediately contacted UL for assistance with CBP.

136.    On April 17, 2020, Lisa contacted Yongbin, informing UL that the Seized Modules were currently being inspected by CBP at the U.S. port, and requested that UL issue approval to CBP as soon as possible. Yongbin responded that he had "already contacted with Li Zhengyong, and it is expected that the certificate can be issued tomorrow." Li Zhengyong is a representative of Da Chuan.

137.    On April 21, 2020, Yongbin sent what he claimed was confirmation from UL that the Seized Modules had authorization from UL to use the UL Mark (hereinafter the "Certificate of Compliance" attached as Exhibit 10).

138.    The Certificate of Compliance bears the marking "Certificate of Compliance" and displays certificate number E513653 and an issue date of April 21, 2020.

139.    The Certificate of Compliance further states, among other things, that the identified Seized Modules "[h]ave been investigated by UL in accordance with the [s]tandards indicated on this Certificate" and that "[t]his is to certify that representative samples of the product as specified on this certificate were tested according to the current UL requirements."

140.    The Certificate of Compliance also includes a hyperlink (https://iq.ulprospector.com) that leads to a "UL Product IQ" webpage that is part of UL's main corporate webpage.

141.    The Certificate of Compliance purports to have been issued by UL and endorsed by "Bruce Mahrenholz, Director North American Certification Program."

142.    Da Chuan reasonably believed that the Certificate of Compliance indeed constituted authorization from UL to use the UL Mark, and accordingly presented the Certificate of Compliance to CBP.

143.    CBP informed Da Chuan that the Certificate of Compliance was not recognized by CBP, that UL claimed the Seized Modules were not authorized by UL to bear the UL Mark, and therefore that the modules were "counterfeit" according to UL.

144.    UL knowingly made a false statement to CBP in April 2020 when UL stated the Seized Modules were not authorized to bear the UL Mark and were "counterfeit."

145.    On April 29, 2020, Hounen was notified by CBP that CBP still required a different UL certificate and that the Seized Modules were "counterfeit" according to UL.

146.    Immediately thereafter, Hounen representative Lisa asked Yongbin to request an appointment with UL's management team so that Lisa could meet with UL to discuss the situation.

147.    On May 1 or 2, 2020, Yongbin stated that UL's management would meet with Hounen.

22

148.     During the same conversation, Yongbin broached the case of "Trina Solar." Trina Solar is a company similar to ReneSola that brands and manufactures solar modules. Yongbin explained that UL had previously helped Trina Solar complete customs clearance and inspection under circumstances similar to those present here (i.e., where modules were manufactured and shipped before the UL certification process had been completed.) Yongbin offered to coordinate with Da Chuan, and stated that UL would help determine how to resolve the issue and facilitate the release of the Seized Modules.

149.     Upon information and belief, UL labeled the Seized Modules as "counterfeit" to conceal the fact that it had not followed its own supposed internal procedures; conduct which led to the seizure of the Seized Modules. Upon information and belief, UL also stated the Seized Modules were "counterfeit" to conceal the fact that it had circumvented its own procedures on prior occasions (e.g., with Trina Solar); conduct which had not yet been uncovered by CBP.

150.     Upon further information and belief, UL stated the Seized Modules were "counterfeit" so as to prevent dilution of the UL Mark.

151.     During this same period, Hounen and Da Chuan continued to press for a meeting with UL management; all of those requests, however, were denied.

152.     During this same time period, Hounen representative Lisa spoke with Xiao Qifeng, the head of UL in China, and requested a meeting; however, Xiao Qifeng rebuffed the request. Instead, Xiao Qifeng told Hounen to contact UL Hong Kong's legal counsel, Mr. Leung. Mr. Leung told Hounen that Da Chuan was not the certification applicant and that he would not discuss the matter further.

153.    On May 25, 2020, Da Chuan sent an email to UL's lawyer Zhao and General Manager Xiao, explaining the outline of the certification process and providing written evidence, while again requesting a meeting to be arranged as soon as possible.

154.    On May 26, 2020, Hounen and Da Chuan learned from counsel for UL that ReneSola had submitted a written letter stating that ReneSola had informed Da Chuan that Da Chuan was not authorized to ship the Seized Modules until *after* UL completed a factory inspection and issued a certificate of approval. (Hereinafter the "ReneSola Statement").

155.    The ReneSola Statement was false, as no one from ReneSola told Da Chuan not to ship any modules.

156.    Also, on May 26, 2020, Li Zhengyong of Da Chuan spoke with Guo Min of ReneSola and told Guo Min that ReneSola *never* told Da Chuan that which was contained in the ReneSola Statement. In response, Guo Min stated that ReneSola has always disagreed with UL's position that Da Chuan was specifically told not to ship the Seized Modules. Guo Min further stated that the original draft of the ReneSola Statement *did not contain the statement that ReneSola told Da Chuan not to ship*. Guo Min further stated that UL demanded that the representation that ReneSola told Da Chuan not to ship be inserted into the ReneSola Statement. Guo Min further told Da Chuan that UL required that the statement be inserted into the draft of the ReneSola Statement as a precondition to issuing a valid certification for the Seized Modules. Guo Min further stated that UL would require Da Chuan to submit a written statement admitting to wrongdoing before UL would approve the release of the Seized Modules. In essence, according to Guo Min, UL would require Da Chuan to take the fall and serve as a scapegoat to conceal UL's wrongdoing before it would agree to assist with resolving issues with CBP such that the Seized Modules could be released.

24

157.    On May 27, 2020, representatives of Da Chuan, Hounen (Lisa), and ReneSola (Guo Min) collaborated on a statement to be issued by Da Chuan to clear up the inaccuracies of the ReneSola Statement and to outline the details of Yongbin's instruction at the November Meeting (hereinafter the "Da Chuan Statement"),

158.    On May 27, 2020, Da Chuan sent the Da Chuan Statement directly to UL. (Da Chuan Statement attached as Exhibit 11).

159.    On May 27, 2020, Da Chuan received a call from Gou Min (ReneSola) who informed Da Chuan that UL had received the Da Chuan Statement, but that UL required amendments to the Da Chuan Statement before UL would issue a valid certification for the Seized Modules. Guo Min told Da Chuan that the only way UL would agree to issue a certificate for the Seized Modules was if Da Chuan were to admit that it was at fault. Specifically, Guo Min told Da Chuan that it must admit to being responsible for shipping the Seized Modules without authorization from UL, which led to the seizure of the Seized Modules.

160.    On June 3, 2020, Da Chuan revised its statement as directed by Guo Min, and falsely admitted to causing the seizure of the Seized Modules (hereinafter the "Coerced Da Chuan Statement" attached as Exhibit 12).

161.    The Coerced Da Chuan Statement was submitted to UL on June 3, 2020.

162.    On June 12, 2020, Da Chuan received a document from UL entitled "Undertaking" which stated, among other things, that Da Chuan was at fault for causing the seizure of the Seized Modules by shipping counterfeit modules (hereinafter the "Undertaking" attached as Exhibit 13).

163.    Da Chuan did not agree with the statements inserted by UL into the Undertaking but was forced to sign the Undertaking because UL threatened that it would not issue a valid UL certificate for the Seized Modules without it. Da Chuan signed the last page and submitted the

Undertaking to UL on June 12, 2020. It did so based on Gou Min's prior communications which indicated that UL would only issue valid certifications *after* Da Chuan admitted to shipping counterfeit modules. (Attached as Exhibit 14). On June 13, 2020, Da Chuan submitted a version of the Undertaking which bore its signature on each page. (Attached as Exhibit 15).

164.    On June 13, 2020, the following day after the execution of the Undertaking, UL issued a "Notice of Completion and Authorization to Apply the UL Mark" (the "UL Authorization") to ReneSola on UL letterhead for the Seized Modules for the North Carolina Project.

165.    The UL Authorization states, in relevant part:

> UL's investigation of your product(s) has been completed under the above Reference Number [E513653, Vol, 1] and the product was determined to comply with the applicable requirements. This letter temporarily supplements the UL Follow-Up Services Procedure and serves as authorization to apply the UL Mark at authorized factories under UL's Follow-Up Service Program.

(Attached as Exhibit 16).

166.    Attached to the UL Authorization was a document entitled "IPI Addendum" which covered products manufactured at the Manufacturing Facility and included the same product and description numbers as the Certificate of Compliance. All Seized Modules were manufactured at the Manufacturing Facility.

167.    Consistent with the representations made by Guo Min on May 27, 2020, UL issued the UL Authorization one day after the Undertaking was submitted to UL by Da Chuan.

168.    On June 13, 2020, Hounen sent the UL Authorization to its U.S.-based attorney, who in turn submitted it to CBP.

169.    On October 15, 2020, UL confirmed "the [UL Authorization] of UL file E513653 was issued by UL to [ReneSola] on May 25, 2020 and then *revised on June 15, 2020 for adding*

*DA CHUAN INVESTMENT (CAMBODIA) Co* [manufacturer of the solar modules at issue in this petition] *Ltd in Cambodia as the authorized manufacturing location...* The Marks on *the specific goods [that are the subject of the petition] are unauthorized when they were imported to the US on May 31, 2020. UL does not consent to the use of the UL Marks on the specific goods that are the subject of the petition and UL does not consent to their importation...*[ReneSola] is the applicant of UL file E513653… [Da Chuan] *was added as an authorized manufacturer on June 15, 2020. Since June 15, 2020, these three entities are the authorized manufacturers under E513653…*" (emphasis not added).

170.    On March 10, 2021, CBP denied the Petitions, concluding that it had probable cause to make the seizure based on UL's representation that the Seized Modules were "counterfeit" and "[Hounen] did not present evidence of having received consent from the U.S. trademark holder, UL, which applies retroactively to seized goods, to use the mark, to import the merchandise, or to remove the [UL Mark]."

171.    On April 9, 2021, UL's counsel sent CBP a letter on UL letterhead regarding 2020-1703-000059-01, which states in relevant part that UL consents to the release of the Seized Modules.

172.    On April 12, 2021, UL provided CBP with written approval to release *all* of the Seized Modules.

173.    Following UL's extraordinary agreement to consent to the release of the modules, Hounen filed supplemental petitions for the Seized Modules based on that consent. CBP has since approved the release of the seized modules, subject to certain conditions, including the obliteration of the UL Mark.

174.     Hounen has paid and/or owes a total in excess of $650,000.00 in demurrage fees for the release of the Seized Modules.

**UL Conduct Following Seizure**

175.     Instead of working with Hounen and CBP for the release of the Seized Modules, UL disclaimed the representations it made to Hounen and Da Chuan and labeled the Seized Modules as "counterfeit." UL remained silent with CBP as to the role it played in causing the seizure of the Seized Modules. Specifically, UL failed to disclose that it gave affirmative direction and guidance as to how and when to ship the Seized Modules – including assurances that the modules could be shipped prior to formal authorization following completion of the certification process – which Da Chuan followed to its detriment, and further to the detriment of Hounen.

176.     UL had a duty to, at the very least, mitigate its damages by informing CBP that the Seized Modules were not counterfeit, and that UL had in fact authorized the Seized Modules to be shipped.

177.     As a result of UL's representations that the Seized Modules were "counterfeit," UL caused the Seized Modules to be seized by CBP.

178.     As a result of UL's actions and representations, CBP did in fact declare the modules to be counterfeit and seized the Seized Modules.

179.     UL knew that its representation that the Seized Modules were "counterfeit" was false when it made the statement to CBP. UL knew that it made false representations when it disclaimed that it told Hounen and Da Chuan that Da Chuan could ship the Seized Modules as long as the UL certification process was ongoing.

180.     Da Chuan and Hounen reasonably followed UL's directions and instructions to their detriment.

181.    Da Chuan is merely a manufacturer of solar modules and was dependent on UL for direction on how to properly ship the Seized Modules.

182.    UL made a false statement to CBP when it told CBP that the Seized Modules were counterfeit and not authorized. In fact, UL provided all instructions as to when and how to ship the Seized Modules, provided the Declaration and the Certificate of Compliance, and the UL Authorization.

183.    Between February 9, 2020, and April 26, 2020, Da Chuan shipped a total of 52 containers (in 8 shipments) to the United States. Of these 8 shipments, 7 were seized by CBP in Norfolk, Virginia, and 1 was seized in Savannah, Georgia.

184.    After the first seizure of Seized Modules, Da Chuan attempted to re-route the shipping vessels, but were unable to since CBP had already placed a "hold" on the shipping containers and there were other goods being shipped on the cargo vessel.

185.    CBP stated that it made its determination to seize the modules based exclusively on the fact that UL claimed the Seized Modules were "counterfeit" and "not authorized."

186.    After CBP's seizure of the Seized Modules, various entities, including UL, began investigating Yongbin and the details surrounding the Certificate of Compliance and UL Declaration.

187.    On October 30, 2020, Yongbin was taken by Chinese police to the Guli Police Station in Changshu and questioned by the Chinese Police and by Chinese attorneys for Hounen.

188.    During that interview with attorneys for Hounen, Yongbin stated that he would tell the truth regarding his involvement "about the process of [ReneSola] applying to [UL] for testing and certification" of the Seized Modules.

189.     Hounen's Chinese attorneys informed Yongbin, among other things, that if he should provide false testimony, he could be subject to a charge of perjury.  Upon information and belief, Yongbin provided his testimony to those representatives under oath.

190.     Yongbin stated that he did in fact send ReneSola confirmation on February 25, 2020, that the UL process was ongoing.

191.     Yongbin further admitted to creating the Certificate of Compliance by taking a piece of paper bearing the official UL seal and then printing the Certificate of Compliance on that piece of paper. Yongbin stated he was motivated to "help the customer get the order…wanted the company to get the certification project, as I also wanted to have this achievement for myself."

192.     Yongbin stated that he continued to mislead Da Chuan when they had questions about the Certificate of Compliance. On April 20, 2020, a Da Chuan representative asked Yongbin "why the brand of [ReneSola] was not indicated on the UL certificate[?]" Yongbin replied that only the name of the company would be indicated on the certificate and listed on the UL website and not the brand. This statement was false, which Yongbin later admitted to the police in China:

Q. So this certificate was not approved by the company, therefore it could not be listed on the website, right?

A. Yes.

193.     Yongbin informed his superior at UL of the Certificate of Compliance and the seizure of the Seized Modules on April 29, 2020. Yongbin's superior at UL stated that UL "would handle the matter."

194.     Yongbin stated that he voluntarily left UL in June of 2020, and claims that he was not terminated by UL for creating the Certificate of Compliance.

195. In May 2020, UL informed Da Chuan that a precondition for receiving approval to use the UL Mark was to admit Da Chuan's purported "role" that led to the seizure of the Seized Modules and execute a written document recounting that role.

196. On May 27, 2020, Da Chuan prepared and sent UL a statement which explained that: it has relative inexperience with UL certification procedure; that it relied on representations from UL and ReneSola; that it did not act intentionally or with malice; and that it would strengthen its own internal policies and understanding moving forward. (*See* Exhibit 11). The difference between the Da Chaun Statement and the Coerced Da Chaun Statement is significant. (*See* Exhibit 12). The Coerced Da Chaun Statement, manipulated by UL, deleted the portion that captured the statement by Yongbin that Da Chaun can ship while certification is still ongoing and that UL will provide Da Chaun the declaration before any modules arrived in the United States.

197. On June 5, 2020, Da Chaun sent the first version of the Undertaking in Chinese. On June 12, 2020, UL responded to Da Chuan by sending a substantially modified statement which UL stated and insisted Da Chuan must sign *before* the UL approval would be issued. (*See* Exhibit 13).

198. The Undertaking states, among other things, that Da Chuan manufactured the Seized Modules with "counterfeit 'UL' marks," that Da Chuan "infringed the exclusive rights of registered trademark owned by UL," that Da Chuan's "unauthorized use of 'UL' constitutes trademark infringement", and that Da Chuan will indemnify UL for any "commercial losses caused by Da Chuan's infringement." (Compare Exhibit 12 with Exhibit 13 and Exhibit 14).

199. Da Chuan further agreed to a liquidated damages provision in the amount of $1,000,000.00 USD "per model…with counterfeit marks" *or* UL's "actual losses," whichever is greater.

200. Da Chuan executed the Undertaking from UL, and sent it on June 12, 2020.

201. UL then issued the UL Authorization dated May 25, 2020, one day after the Undertaking was executed – on June 13, 2020.

202. UL completed approval of the Manufacturing Facility on June 18, 2020.

203. The Seized Modules include the exact same specifications as the solar modules approved for UL certification on or around June 13, 2020, and *all* of these modules were manufactured at the Manufacturing Facility.

**North Carolina Modules Not Seized and Hounen Negotiations with UL**

204. Some of the ReneSola Modules were not seized by CBP and were delivered to the North Carolina Project. (The ReneSola Modules installed at the North Carolina Project hereinafter referred to as the "North Carolina Modules").

205. In an attempt to mitigate the collective pool of losses, Hounen began to negotiate with UL for the release of the Seized Modules. Hounen suggested that it either pay some amount of damages to UL, or that UL consent to the release of the Seized Modules, which would allow Hounen to re-sell the Seized Modules to a foreign buyer.

206. Hounen explained in detail that Hounen and Da Chuan received confirmation from Yongbin that it could affix the UL Mark *before* shipment of the Seized Modules, that Yongbin assured Hounen that the UL Declaration allowed for use of the UL Mark, and that the Seized Modules were shipped per UL's instructions.

207. After subsequent negotiation between UL and Hounen, and in an attempt to mitigate the collective pool of damages, UL agreed to consent to the release of the Seized Modules, and notified CBP of its consent.

208.     On March 5, 2021, UL inspected the North Carolina Modules and found that "no non-conformances were identified." (March 5, 2021 letter from UL attached as Exhibit 17).

209.     As the North Carolina Modules were manufactured at the same facility and during the same time period as the Seized Modules, the Seized Modules would have been given UL approval and would not have been seized but for UL's actions and representations that the Seized Modules were "counterfeit."

210.     After the seizure of the Seized Modules by CBP, Hounen was unable to deliver the Seized Modules to Endepo pursuant to the First PO and Second PO.

211.     As a result, Endepo was unable to deliver the Seized Modules to certain third-party buyers, including the owner of the North Carolina Project.

212.     Because UL caused Hounen to breach the First PO and Second PO, UL is liable to Hounen to the extent Hounen is liable to Endepo for breach of any contract that provided for the sale of the Seized Modules, as well as Hounen's actual damages and losses.

## COUNT I
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### Against Defendant UL LLC

213.     Plaintiff reasserts and re-alleges Paragraphs 3-212 above as if fully set forth herein.

214.     Section 2 of the Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1, et. seq., defines "unlawful practices" as:

> Unfair methods of competition and unfair or deceptive acts or promises, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

215.    A defendant's good faith in making a representation to another is irrelevant; even an innocent misrepresentation is actionable. *Duran v. Leslie Oldsmobile, Inc.,* 229 Ill. App. 3d 1032, 1039 (1992)*; see also Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 589 (7th Cir. 2001).

216.    A plaintiff may recover both compensatory and punitive damages. *See, generally, Black v. Iovino*, 219 Ill. App. 3d 378 (1991). A successful plaintiff may also obtain an award for attorney's fees under the Act, which may not be available for common law fraud actions. 815 ILCS 505/10a; *Ekl v. Knecht*, 223 Ill. App. 3d 234, 239 (1991).

217.    Damages are proximately caused if they are in fact caused by a method or practice that is unlawful under the Act, that is, if the damages would not have occurred but for the violation of the Act. *Shannon v. Boise Cascade*, 208 Ill.2d 517, 525 (2004).

218.    At all pertinent times hereto, UL was engaged in trade or commerce within the meaning of the Consumer Fraud Act, and Plaintiff is meant to be protected within the Act's coverage.

219.    Based on the services offered to potential customers by UL, any potential customer who would contract for or use the services offered by UL is at risk of being impacted by the same unethical and deceptive practices engaged in by UL as described throughout this complaint.

220.    While engaged in trade or commerce, UL committed unfair and/or deceptive acts or practices declared unlawful under Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, by falsely stating to CBP that the Seized Modules were "counterfeit," "not authorized," and by causing Da Chuan to execute the Undertaking in exchange for the UL Authorization.

221.    The statements and representations made by UL to Plaintiff and CBP were made with the intent that Plaintiff and/or CBP rely on those statements and representations.

222.    UL's acts as set forth above were willful and intentional, and done with evil motive or reckless indifference to Plaintiff's rights.

223.    UL's acts as set forth above violate the Consumer Fraud Act and has a public interest impact.

224.    UL's acts as set forth above were not only deceptive, but unfair, in that UL's acts offend public policy.

225.    UL's acts as set forth above were not only deceptive, but unfair, in that UL's acts are immoral, unethical, oppressive, and unscrupulous.

226.    UL's acts as set forth above were not only deceptive, but unfair, in that UL's acts cause substantial injury to consumers.

227.    As a proximate result of UL's conduct as set forth above, Plaintiff has been damaged, and continues to suffer damages.

WHEREFORE, Hounen prays that this honorable Court enter judgment on behalf of Hounen, and against UL for fraud, in an amount no less than $1,000,000.00, the exact amount to be determined at trial, for Hounen's damages resulting from the breach of the First PO and Second PO, the amount of Endepo's liability for the contracts it breached with the end users of the North Carolina Modules, lost profits, storage and/or demurrage fees owed and/or paid to CBP, and penalties assessed by CBP, plus Court costs of the suit, punitive damages, and such additional relief as may be permitted by the law.

**COUNT II**
**Fraud**
**Against Defendant UL LLC**

228.    Plaintiff reasserts and re-alleges Paragraphs 3-212 above as if fully set forth herein.

229.     Representatives of Hounen, UL, and Da Chuan were all in attendance at the November Meeting when the Delivery Timeline requirements were discussed and agreed to.

230.     UL, through its representative Yongbin, told Hounen at the November Meeting that the Seized Modules would reach the United States by the Delivery Timeline. Yongbin further stated that the Seized Modules could be shipped as long as the UL process was ongoing.

231.     Da Chuan shipped the Seized Modules pursuant to the instruction and direction given by UL.

232.     Da Chuan and Hounen reasonably relied on UL's instructions.

233.     Da Chuan only shipped the Seized Modules with the UL Mark affixed as it was told by UL it had authority to affix the UL Mark and ship the Seized Modules.

234.     Yongbin provided the Declaration.

235.     Yongbin was at all times acting in his capacity as an employee of UL for the benefit of UL.

236.     Between February 9, 2020, and April 26, 2020, Da Chuan shipped a total of 52 containers (in 8 shipments) to the United States. Of these 8 shipments, 7 were seized by CBP in Norfolk, Virginia, and 1 was seized in Savannah, Georgia. As a result of UL's actions, Hounen was unable to deliver the Seized Modules and has breached the First PO and Second PO with Endepo.

237.     UL made false statements to CBP when it stated Hounen had not been given approval to use the UL Mark and that the Seized Modules were "counterfeit" and "not authorized."

238.     Hounen has been damaged in an amount in excess of one million dollars ($1,000,000) caused from UL's fraudulent actions.

239.    As a result of UL's actions, Endepo has breached its contracts with third parties for the sale of the North Carolina Modules.

WHEREFORE, Hounen prays that this honorable Court enter judgment on behalf of Hounen, and against UL for fraud, in an amount no less than $1,000,000.00, the exact amount to be determined at trial, for Hounen's damages resulting from the breach of the First PO and Second PO, the amount of Endepo's liability for the contracts it breached with the end users of the North Carolina Modules, lost profits, storage and/or demurrage fees owed and/or paid to CBP, and penalties assessed by CBP, plus Court costs of the suit, punitive damages, and such additional relief as may be permitted by the law.

### COUNT III
### Negligent Misrepresentation (in the alternative to Counts I and II)
### <u>Against Defendant UL LLC</u>

240.    Plaintiff reasserts and re-alleges paragraphs 3-212 above as if fully set forth herein.

241.    UL made negligent statements of material fact when it stated: 1) the Seized Modules could be shipped as long as the UL process was ongoing; 2) that a Declaration was sufficient to import the modules into the United States; and 3) that UL did not authorize the shipment and certification of the Seized Modules which is stated were "counterfeit."

242.    UL made these statements carelessly and negligently with the intention to induce Hounen or CBP's action.

243.    Hounen did act in reliance on UL's statements and representations.

244.    Hounen has been damaged by UL's negligent statements and actions.

245.    UL's actions are the proximate cause of Hounen's damages.

WHEREFORE, Hounen prays that this honorable Court enter judgment on behalf of Hounen, and against UL for negligent misrepresentation, in an amount no less than $1,000,000.00,

the exact amount to be determined at trial, for Hounen's damages resulting from the breach of the First PO and Second PO, the amount of Endepo's liability for the contracts it breached with the end users of the North Carolina Modules, lost profits, storage and/or demurrage fees owed and/or paid to CBP, and penalties assessed by CBP, plus Court costs of the suit, and such additional relief as may be permitted by the law.

June 21, 2022                                  Respectfully Submitted,

                                               Hounen Solar, Inc.


                                               *s/Daniel T. Fahner*
                                               One of its Attorneys

Daniel T. Fahner
(daniel.fahner@rkfglobal.com)
Alex Kosyla
(alex.kosyla@rkfglobal.com)
RKF Global PLLC
200 W. Madison St.
Suite 1940
Chicago, Illinois 60606
Tel: (312) 888-2000