**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HOUNEN SOLAR, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 22 CV 3240 |
| UL LLC, RENESOLA YIXING CO., LTD. | ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) ) | |

**ORDER**

For the reasons set forth in the Order and Statement below, Defendant UL LLC's motion to dismiss the Second Amended Complaint [23] is granted without prejudice. Plaintiff is granted leave to amend its complaint by May 12, 2023.

**STATEMENT**

Plaintiff Hounen Solar, Inc. ("Hounen"), a solar-module distributor, sues UL LLC ("UL"), a company that certifies products and manufacturing facilities as adhering to safety standards.[1] Hounen alleges that UL committed fraud and negligence by eliciting promises that it knew it never intended to honor. UL guaranteed that it would confirm to United States Customs and Border Patrol ("CBP") that Hounen was authorized to use UL's mark on its solar modules should a problem arise with importing the modules into the United States. But when push came to shove, UL reneged on its promise. According to Hounen, UL led CBP to believe the modules were counterfeit, which caused CBP to seize them. Hounen alleges that it was injured by this seizure because it delayed delivery of the modules to an end buyer in the United States.

UL moves to dismiss the complaint. Many unresolved questions remain regarding the relationships between relevant actors and the reasonableness of Hounen's reliance on UL's representations, which would counsel against granting the motion. Hounen's own allegations show, however, that UL did not cause Hounen's injury: a delay in shipment that led to a breach of

---

[1] Jurisdiction is based on diversity. The complaint plausibly pleads an amount in controversy in excess of $75,000. Hounen, a California corporation with its principal place of business in Walnut, California, is a citizen of California. UL is a limited liability company whose sole member is UL Solutions Inc., a Delaware corporation with its principal place of business in Illinois and is, accordingly, a citizen of Delaware and Illinois. Codefendant ReneSola Yixing Co., LTD ("ReneSola"), which has not yet been served and has not appeared, is alleged to have its principal place of business in China, but its place of incorporation is not alleged (a flaw that must be corrected if Hounen opts to file a third amended complaint).

contract. Hounen would have breached the underlying contract regardless of any action on UL's part. UL's motion is therefore granted without prejudice.

I.      Background[2]

Hounen distributes solar modules (more colloquially known as solar panels). In October 2019, Hounen began negotiating with Endepo, Inc., a company that facilitates foreign goods transactions, to sell solar modules to a commercial utility project in North Carolina. Hounen and Endepo agreed that they would work together to facilitate that transaction, but only if they could find suitable agreements with other necessary parties, such as a module manufacturer and a safety-standard certifier. To account for these unknown factors, Hounen and Endpo reached a baseline agreement wherein terms such as price and quantity of the solar modules were tentative. The only essential term of the agreement was that the modules would be delivered to North Carolina between March 10 and April 15, 2020.

Hounen and Endepo decided to pursue licensing with the internationally recognized solar-module brand ReneSola. Defendant ReneSola, which is headquartered in China and has not yet appeared in this action, licenses its trademark brand to solar-module manufacturers. Since 2005, ReneSola has sought to expand its brand both in the Chinese market and internationally by collaborating with manufacturing facilities all over the world.

Licensing the solar-module mark was only one step in Hounen's process of procuring the solar modules for the North Carolina project. Although certification is not required to import foreign products to the United States, many imported products also bear a mark indicating that the product complies with certain safety standards. Hounen and Endepo sought a third-party safety certification company to signal to its end buyers that their products were safe and reliable.

Defendant UL markets itself as one of the most prominent safety certification companies for products imported into the United States. Relying on UL's reputation in the certification market, Hounen and Endepo decided to pursue UL as a potential third-party certifier. Hounen, however, did not interact with UL directly. Instead, Hounen sought out what UL describes as a "certification body" called UL-CCIC, a UL-affiliated body that operates in China. UL owns several certification bodies, which are legal entities that exist independently from UL. UL-CCIC, which appears to be a joint venture between UL and a third-party foreign investor, provides services for UL by authorizing customers to use UL marks. In the next step of the Endepo project, Hounen representatives contacted UL-CCIC to discuss UL certification.

Meanwhile, Hounen and Endepo arranged for a Cambodian company, Da Chuan Investment, to manufacture the solar modules. Although the facility where Da Chuan envisioned manufacturing the modules had the capacity to produce the modules, the facility itself did not have UL certification.

---

[2] When evaluating a motion to dismiss, the Court accepts as true all the well-pleaded facts in Hounen's complaint and draws all reasonable inferences in its favor. *Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013). Unless otherwise noted, "complaint" in this order refers to Hounen's Second Amended Complaint, ECF No. 16, which is the operative complaint.

Around the same time, ReneSola agreed to license the ReneSola brand to Da Chuan's manufacturing facility. A ReneSola representative named "Guo Min" told a Hounen representative named "Lisa" that UL and ReneSola had worked together previously on similar projects. In fact, ReneSola had separately applied for a certification from UL for the same type of modules that Da Chuan was set to manufacture. Considering ReneSola and UL's prior relationship, Guo Min told Lisa that he would help facilitate UL certification for the project.

On November 27, 2019, representatives from UL-CCIC, Hounen, and Da Chuan met in China to discuss the Hounen/Endepo project. Sometime prior to the meeting, Lisa from Hounen had initiated discussions about UL Certification with a UL-CCIC employee named "Yongbin."[3] The main topic of discussion was whether UL (acting through UL-CCIC) could authorize Hounen and Da Chuan to use its mark within the timeframe contemplated in the Hounen/Endepo agreement. Lisa explained to Yongbin that its potential buyer, Endepo, would only accept delivery of the ReneSola modules by the specified timeframe, between March 10 and April 15, 2020. Lisa further emphasized that Hounen and Endepo made clear that their agreement was contingent upon UL, or a competitor's, authorization of its mark in time for a smooth delivery.

In response, Hounen alleges, Yongbin guaranteed that UL would authorize use of the UL Mark on ReneSola modules in time, "regardless of whether certification had been completed." Second Am. Compl. ¶ 118, ECF No. 16. Yongbin first opined that the certification would likely be complete by the time the ReneSola modules reached the United States. If that assessment proved overoptimistic, Yongbin assured Hounen that UL would still authorize the modules to bear the mark. UL would retroactively certify the product by field testing it once the products arrived in the United States.

Explaining the logistics, Yongbin specified that the ReneSola modules would be listed on UL ProductiQ, a UL database that is visible to CBP, once they were certified. The modules' inclusion in the database would indicate to CBP that certification was complete and that the ReneSola modules was authorized to bear the UL mark. If the modules were not certified by the time they arrived in the United States, Yongbin would provide a declaration from UL that confirmed that certification was ongoing and that would serve as evidence that UL authorized the mark's use. Yongbin assured Hounen that it was common practice for UL customers to use the UL mark before the certification process was over and that UL would confirm that it authorized use of the mark should CBP raise any concerns.

Satisfied that the project could be completed in time, Hounen decided to pursue UL as a certifier for the ReneSola modules. At the conclusion of these discussions, Hounen alleges, the parties envisioned the following roles: ReneSola would grant Da Chuan a license to use ReneSola's trademarks, Da Chuan would manufacture the modules, UL would authorize Da

---

[3] Although Hounen alleges that Yongbin was acting as a representative of UL at the November 2019 meeting, the complaint elsewhere clarifies that Yongbin was "an employee of UL-CCIC." Second Am. Compl. ¶ 176, ECF No. 16; *see also id.* ¶¶ 180-81. The complaint's allegation that Yongbin was a representative of UL is a legal conclusion that the Court need not accept as fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

Chuan's use of the UL mark, and Hounen would ship the ReneSola modules to Endepo using UL's mark.

Hounen and Da Chuan then executed documents for ReneSola module production. In December 2019, Hounen (sometimes acting through third parties) completed all the paperwork for UL certification and paid the associated fees.

At the end of December 2019, Hounen and Endepo entered into their first purchase order contract. That contract set out the purchase price and number of ReneSola brand modules to be delivered to North Carolina no later than March 10, 2020. About a month later, Hounen and Endepo entered into their second purchase order contract. That purchase order contract envisioned two more shipments of ReneSola modules to be delivered on April 5 and April 15, 2020, respectively.

The baseline agreements having been finalized, Da Chuan began production of ReneSola modules. On January 3, 2020, Da Chuan and Hounen informed ReneSola that the modules were ready for shipment and asked ReneSola for the UL mark to append to the modules. Guo Min, the ReneSola representative, passed along the mark to Da Chuan and Hounen from a UL engineer. After receiving the go-ahead from Hounen, Da Chuan appended the UL mark to the manufactured ReneSola modules.

Around February 9, 2020, Da Chuan shipped the first batch of ReneSola Modules bearing the UL Mark to the United States. UL, however, had not yet completed certification of the mark. On February 25, 2020, Yongbin provided ReneSola with a declaration that bore UL-CCIC's official seal and stated that "testing is ongoing." ReneSola then forwarded the declaration to Hounen and Da Chuan. Consistent with Yongbin's prior representations at the November 2019 meeting, Hounen and Da Chuan assumed that the February 2020 Declaration would signify to CBP that they were authorized to use the UL mark.

On March 25, 2020—15 days after the first shipment of modules was supposed to arrive in North Carolina—CBP targeted the first shipment of solar modules for examination, suspecting the modules were counterfeit. In early April, CBP detained the shipment, and on April 15, 2020, CBP sent redacted photos of the modules to UL for verification that the modules were UL-certified.

Hounen must have learned of this development quickly; two days later, on April 17, Hounen contacted Yongbin to relay that CBP was inspecting the modules and asked for evidence that UL authorized it to use its mark. Far from providing the requested authorization, UL told CBP that same day that it was "highly suspicious" of the authenticity of the solar modules that CBP detained.

Around this time, Yongbin explained to a Da Chuan representative that it would be too late to list the ReneSola modules as authorized on UL's internal database that is visible to CBP. On April 21, 2020, Yongbin provided Da Chuan with another document meant to reflect UL's authorization to use its mark. This time, Yongbin sent Da Chuan a Certificate of Compliance issued to ReneSola, which stated that the panels had "been investigated by UL in accordance with" applicable standards. April Certificate of Compliance, Ex. 20 to SAC, ECF No. 16-20. The Certificate also stated, however, that it "does not provide authorization to apply the UL mark." *Id.*

The same day that Yongbin sent Da Chuan the Certificate, CBP sent unredacted photos of the solar module shipment to UL. UL responded to CBP with a formal letter, stating that the UL marks on the ReneSola modules were not authorized.

Da Chuan or Hounen apparently forwarded the "Certificate of Compliance" to CBP as evidence of UL's authorization; CBP sent the Certificate to UL for verification on April 24, 2020. After UL responded that it could find no record of the manufacturer in its databases, CBP seized the first shipment in early May. CBP similarly seized seven more shipments of ReneSola modules, which arrived in the United States between mid-April and the end of May 2020.

Hounen was not pleased with CBP's involvement. In late April, Hounen asked Yongbin to resolve the issue with UL-CCIC management. Yongbin assured Hounen that management would resolve the problem. After contacting his supervisors about the issue and requesting a meeting with Houen, Yongbin spoke with Guo Min of ReneSola, expressing a lack of concern. Yongbin explained to Guo Min that UL-CCIC had similarly authorized another company, Trina Solar, to use a mark before certification was completed.

The promised resolution between Hounen and UL-CCIC management never materialized, however. Hounen alleges that, instead, UL and ReneSola coerced Da Chuan into assuming responsibility for shipping the ReneSola modules without authorization from UL. Allegedly, unless Da Chuan issued a statement taking the fall for shipping the seized modules without permission, UL would not authorize CBP to release them. Da Chuan succumbed to UL's demands and sent it a document admitting to shipping counterfeit modules. In May 2020, UL issued a Certificate of Compliance to ReneSola for the seized modules.

Hounen submitted several petitions to CBP challenging the seizure of the modules. CBP denied those petitions in March 2021, based on UL's previous representations that the modules were counterfeit. After UL consented to the release of all the seized modules in April 2021, CBP approved their release. By then, over a year had passed since Endepo and Hounen's agreed essential deadline to deliver the modules. In the end, Hounen never delivered the modules to Endepo.

In October 2020, after CBP seized the ReneSola modules (but before it released them), Chinese investigators questioned Yongbin about ReneSola's application to UL-CCIC for safety certification. During that interview, Yongbin explained that UL-CCIC did not give him permission to send ReneSola the February 2020 declaration stating that testing for ReneSola certification was ongoing. Hounen further alleges, however, Yongbin had given similar declarations to other companies to use as evidence that UL authorized use of its mark without reprimand from UL.

According to Hounen, the facts recounted above raise a plausible inference that UL and ReneSola orchestrated a fraudulent scheme. UL, seeking to expand its reach in the Chinese market, pursued Hounen's business through misleading guarantees. Optimistic that it could certify the ReneSola product in time for Hounen's delivery deadline, which Hounen expressed was essential, UL told Hounen what Hounen wanted to hear. UL—acting through its agents UL-CCIC and Yongbin—promised that Hounen's products would pass through U.S. customs, certified or not.

What UL allegedly concealed from Hounen is that it never intended to authorize Hounen to use its marks should it be unable to complete certification in time. UL did not wish to admit to CBP or Chinese regulators that it would approve use of a mark for a product that it had not certified. UL's alleged plan was therefore to inform CBP that the modules were counterfeit should a problem arise. To maintain plausible deniability that it never authorized Hounen's use of the mark, UL used ReneSola as an intermediary to communicate with Hounen and Da Chuan.

Hounen cites overoptimistic expectations, the desire for new business, and regulatory approval as motives for UL to commit fraud. UL understood that it could face scrutiny from Chinese regulators if it came to light that UL was signing off on products' safety standards before certification was complete. It was important for UL to remain in the good graces of Chinese regulators to pursue its goal of Chinese market expansion. Shortly before the events alleged in the complaint, UL-CCIC had become a testing laboratory for products bearing a China Compulsory Certification, a safety mark administered by the Chinese government. UL-CCIC obtained testing service authorization for numerous products and was seeking to become a Chinese Compulsory Certification mark provider for solar modules. To avoid losing its newfound clout with Chinese regulators, UL concealed its previous representations to Hounen and Da Chuan.

Based on these allegations, Hounen sued UL and ReneSola, seeking to recover damages for injury related to the CBP seizure of the modules and for any contractual liability owed to Endepo. UL moves to dismiss the complaint for failure to state a claim.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Complaints alleging fraudulent conduct are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements, describing the "who, what, when, where, and how" of the fraud. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). Even when a complaint satisfies the pleading standards of the Federal Rules, however, a plaintiff may plead itself out of court "when the complaint includes 'facts that establish an impenetrable defense to its claims.'" *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016) (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)).

Fact-intensive questions about each party's roles and authority to act underpin the complaint's allegations. UL argues that it cannot be held liable for any of the conduct described in the complaint because it is alleged against a separate legal entity, UL-CCIC. It is true that generally, "the obligations of a corporation are not shared by affiliates." *See Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015). A corporation may, however, face liability for the actions of an agent performed within the scope of that agent's authority. *See Caligiuri v. First Colony Life Ins. Co.,* 318 Ill. App. 3d 793, 801, 742 N.E.2d 750, 756 (2000) ("[A] corporate subsidiary may act as the agent of its parent corporation if the elements of an agency are proved

6

in the context of a given case.").[4] Hounen responds that UL-CCIC, through its employee Yongbin, was acting as UL's agent when it represented that it would authorize UL's mark without certification. In support, Hounen points to UL's marketing materials, which describe UL-CCIC as a body that carries out the very certification services that UL provides on its behalf. From these materials, Hounen argues it is plausible to infer that UL-CCIC acted for UL with UL's knowledge, which would support a prima facie case of agency. *See People v. Parsons Co.*, 122 Ill. App. 3d 590, 600, 461 N.E.2d 658, 666 (1984).

As this Order's extensive background section makes clear, the complaint presents myriad factual questions bearing on the scope of UL-CCIC's and Yongbin's authority. To be sure, Hounen's complaint is no paradigm of clarity. Notwithstanding its over-four-hundred-paragraph span, the complaint leaves unanswered many critical points, such as how and why Hounen pursued UL-CCIC, as opposed to some other UL affiliate, for certification. But the extent of UL's relationship with and control of UL-CCIC, Yongbin's authority to act on UL or UL-CCIC's behalf, and UL's knowledge of Yongbin or UL-CCIC's practices all seem to be questions amenable to resolution in discovery. *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014) ("Agency is a notoriously fact-bound question[.]"). These questions loom especially large given that Yongbin described UL as previously sanctioning similar certification practices with another company, Trina Solar. It seems premature to resolve these uncertainties in considering a motion to dismiss.

UL also argues that Hounen has not stated a plausible claim to support theories of fraud, negligent misrepresentation, or negligence. To state a claim for fraud or negligent misrepresentation, Hounen must show that it reasonably relied on UL's statements. *Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶¶ 71, 87, 19 N.E.3d 1019, 1036, 1038. UL paints Hounen as alleging nothing more than irrational reliance on Yongbin's unorthodox (and unauthorized) promises. It argues, among other things, that no reasonable actor would believe that UL would authorize products for use before certification, and that Yongbin's statements were mere expressions of future acts and opinions that cannot support a fraud claim.[5] *See, e.g., Ault v. C.C. Servs., Inc.*, 232 Ill. App. 3d 269, 271, 597 N.E.2d 720, 722 (1992) (mere broken promises or statements of future action do not support a fraudulent inducement claim). As for negligence, UL argues that Hounen does not allege one of its basic elements: a duty to report to CBP that Hounen

---

[4] The parties appear to agree that their claims are substantively governed by Illinois law.

[5] UL also argues that Hounen unreasonably relied on Yongbin's representations, appending to its motion written service agreements between UL and Hounen subsidiaries. Those service agreements allegedly set forth the exclusive terms governing certification of the ReneSola modules. At this juncture, the import of these agreements—which involve non-parties UL GmbH, Hounen Cambodia and Hounen China—remains unclear. In any case, because Hounen has insufficiently alleged that UL proximately caused its injuries, the Court need not decide whether it is appropriate to consider those agreements at this stage.

was authorized to use the mark. *See Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 2012 IL 112479, ¶ 19, 973 N.E.2d 880, 887.

The complaint similarly raises many factual questions bearing upon the reasonableness of Hounen's reliance and the scope of any duty UL owed to Hounen. There remains uncertainty, for example, about the prevalence of certification companies authorizing use of a mark before the certification process is complete. Also left open is the question of whether, during the November 2019 meeting, Yongbin was simply expressing naive optimism about UL's ability to authorize use of its mark or whether, at the time of his representations, he knew that UL-CCIC had no intention of honoring his guarantees. *See Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (noting "particularly egregious" broken promise that induces reliance may amount to fraud in some circumstances). And again, the complaint leaves unresolved the extent of UL's knowledge about UL-CCIC's or Yongbin's representation, which may give rise to a foreseeable duty to relay accurate information to CBP. *See Jane Doe-3*, 2012 IL 112479, ¶ 20, 973 N.E.2d at 887 (noting reasonable foreseeability of the injury as factor to consider in determining whether a duty existed).

At this stage of the litigation, however, it is unnecessary to resolve these fact issues to decide whether Hounen has stated plausible claims for fraud or negligence against UL. Whatever legal theory Hounen chooses to pursue, it must allege that UL's conduct proximately caused its injuries. *Phillips*, 2014 IL App (1st) 122817, ¶¶ 75, 88, 19 N.E.3d at 1036, 1038 (including proximate cause as an element of fraud and negligent misrepresentation); *Bell ex rel. St. v. Bakus*, 2014 IL App (1st) 131043, ¶ 22, 16 N.E.3d 819, 824 (plaintiff alleging negligence has the burden of proving an injury that was proximately caused by the breach of duty). An element of proximate cause under Illinois law is "cause in fact," which is present "when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Cochran v. Securitas Sec. Servs. USA, Inc.*, 2016 IL App (4th) 150791, ¶ 57, 59 N.E.3d 234, 249 (quotation omitted). On that point, Hounen's allegations stand in its own way. Hounen seeks damages for injuries that it incurred in breaching its contract with Endepo, but based on its own allegations, UL did not cause Hounen's breach. UL's actions were not even a but-for cause of Hounen's injuries.

According to the complaint, Hounen's agreement with Endepo was "contingent" upon Hounen's ability to deliver all of the ReneSola modules to Endepo between March 10 and April 15, 2020. Second Am. Compl. ¶ 89, ECF No. 16. Pursuant to the first purchase order agreement, the first delivery was due in North Carolina on March 10, 2020. It was not until March 25, 2020—fifteen days after the first purchase order delivery deadline—that CBP targeted the ReneSola shipment. And it was not until April 15, 2020—the delivery deadline for ***all*** the shipments—that CBP even attempted to contact UL about the authenticity of the modules. UL could only have vouched for the ReneSola modules, consistent with its alleged broken promise, after the entirety of the shipments were due in North Carolina. In other words, Hounen had already materially breached its contract with Hounen by blowing the crucial delivery deadline, notwithstanding any action or inaction on UL's part.

To salvage the link between its injury and UL's actions, Hounen downplays the importance of the delivery deadline. Hounen argues that UL raises an affirmative defense concerning mitigation of damages rather than liability. According to Hounen, UL did not know the extent to which Endepo waived any technical breach of contract, so it was still foreseeable that UL's representations to CBP could damage Hounen.

That argument is not convincing, legally or factually. Black letter law counsels that proximate cause is an element of both fraud and negligence, not an affirmative defense. *See, e.g.*, *Phillips*, 2014 IL App (1st) 122817, ¶¶ 75, 88, 19 N.E.3d at 1036, 1038; *Bell*, 2014 IL App (1st) 131043, ¶ 22, 16 N.E.3d at 824. The allegations in the complaint, moreover, bely Hounen's characterization of its breach as "technical" in its brief. Pl.'s Resp. at 9, ECF No. 27. In its complaint Hounen emphasizes UL's knowledge of the importance of the delivery deadline in its agreement with Endepo. *See* Second Am. Compl. ¶ 108, ECF No. 16 ("Specifically, Lisa told Yongbin . . . that the buyer of [the ReneSola Modules] could only accept by the Delivery Timeline."); *id.* ¶ 109 ("Lisa told Yongbin that UL must guarantee that it could authorize use of the UL Mark to meet the Delivery Timeline . . . and specifically stated that Hounen and Endepo would not follow through on their baseline agreement if authorization to use the UL Mark by the Delivery Timeline was not possible."). Indeed, if the delivery deadline were not an essential term of the contract, UL's alleged misrepresentation to Hounen would not have been material. Hounen can't have it both ways; either the delivery deadline was critical to its deal with Endepo or it wasn't. Having failed to plausibly allege in the complaint that UL caused Hounen's injury—the failure to timely deliver the modules to its end buyer—Hounen does not state a claim for fraud or negligence.

In sum, Hounen's complaint raises many factual issues that would bear upon any agency relationship between UL and UL-CCIC, Hounen's reasonable reliance on UL-CCIC's representations, and any duty that UL owed to Hounen. Although those unresolved factual issues would weigh against granting a motion to dismiss, Hounen's own allegations establish that UL did not cause its alleged injuries. The Court does not find, however, that any amendment would be futile; there may be additional facts that would bear upon questions of causation, and plaintiffs ordinarily should be given at least one opportunity to amend after a court dismisses a complaint. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). UL's motion to dismiss is therefore denied without prejudice. The Court will allow Hounen to amend its complaint to resolve the deficiency identified in this Order by May 12, 2023.

Dated: April 13, 2023

John J. Tharp, Jr.
United States District Judge