IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOUNEN SOLAR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 CV 3240 |
| | ) | |
| UL LLC, RENESOLA YIXING CO., LTD. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

**ORDER**

For the reasons set forth in the Order and Statement below, Defendant UL LLC's motion to dismiss the Third Amended Complaint [36] is denied. Answer due 8/18/23. This case is referred to the assigned Magistrate Judge for all discovery scheduling and supervision, and for any settlement conference the parties may seek.

**STATEMENT**

In its Second Amended Complaint, plaintiff Hounen Solar, Inc. ("Hounen"), a solar-module distributor, alleged that defendant UL LLC ("UL"), a safety-certification company, committed fraud and negligence.[1] Hounen pursued UL as a third-party certifier of solar modules that it was manufacturing overseas and shipping to the United States. UL guaranteed that it would provide confirmation to U.S. Customs and Border Patrol ("CBP") that Hounen was authorized to use its trademark. According to Hounen, this guarantee was a knowing falsehood: instead of consenting to Hounen's use of its trademark when CBP seized Hounen's modules, UL represented that the modules were counterfeit.

UL moved to dismiss the Second Amended Complaint; this Court granted the motion without prejudice. Hounen alleged that its injury stemmed from breach of a contract with a U.S. end buyer. Its own allegations established, however, that UL did not cause the delay in shipment

---

[1] Codefendant ReneSola Yixing Co., LTD ("ReneSola"), has not yet been served and has not appeared. In its previous Order, the Court noted that Hounen failed to allege ReneSola's place of incorporation in the Second Amended Complaint, which is required to plead a corporation's citizenship and ground subject-matter jurisdiction in diversity. In the TAC, Hounen alleges that ReneSola is incorporated and has a principal place of business in China. The TAC plausibly pleads an amount in controversy in excess of $75,000 and that Hounen is a citizen of California. The Court is therefore satisfied that the TAC adequately pleads subject matter jurisdiction.

that led to the breach. This Court held that Hounen did not state a claim for fraud or negligence because the allegations failed to establish a crucial element of both legal theories: proximate cause.

Hounen's Third Amended Complaint ("TAC") is now before the Court. The TAC clarifies that Hounen's injury stems from CBP's prolonged and indefinite seizure of the modules, rather than a delay in shipment. Satisfied that Hounen's allegations now establish a plausible causal connection, the Court denies UL's motion to dismiss the TAC.

I. Background[2]

In October 2019, Hounen contracted with an American company called Endepo to facilitate the sale of solar modules to various end-buyers in the United States.[3] To assure the end-buyers of their products' reliability, Hounen and Endepo sought out a third-party safety certification company. Third-party certification companies test products against certain internal standards and affix their marks on products that meet those standards. Based on UL's reputation in the certification industry, Hounen and Endepo sought out UL-CICC, an affiliate of UL's,[4] to discuss UL as a potential third-party certifier. Around the same time, Hounen and Endepo arranged for Da Chuan, a Cambodian company, to manufacture the modules. Defendant ReneSola, a Chinese company internationally recognized for its brand of solar modules, agreed to license its brand to Da Chuan's manufacturing facility.

Hounen and Endepo's baseline agreement was contingent upon Hounen's identification of a suitable third-party certifier for the solar modules. Pursuant to that agreement, the modules would be delivered to the United States between March 10, 2020, and April 15, 2020 (what the parties call the "Delivery Timeline"). Although Hounen and Endepo's agreement was contingent upon the modules' arrival in the United States in a manner consistent with the Delivery Timeline, the parties agreed that a failure to meet the Delivery Timeline would trigger discretionary penalties, rather than termination.

---

[2] This Court's previous Order and Statement laid out the background facts relevant to this case in detail. *See* ECF No. 36. To avoid redundancy, this Order focuses on the facts relevant to UL's renewed motion to dismiss the TAC.

[3] In the TAC, Hounen adds allegations that a second direct customer, Solar PV LLC ("Solar PV") "contracted for and expected to receive certain of the Seized Modules." TAC ¶ 116, ECF No. 42. This Order, like the TAC, focuses its allegations on the contract between Hounen and Endepo.

[4] The TAC alleges that UL-CCIC is a Chinese "voluntary product certification service" owned by UL and a third-party foreign investor. TAC ¶ 7, ECF No. 42. As discussed in the Court's previous Order and Statement, the complaint leaves open questions about the extent of UL's relationship with and control of UL-CCIC. Order at 7, ECF No. 36. The Court remains of the view that it is premature to resolve these questions at this juncture.

To initiate discussions about certification, a representative from Hounen contacted a UL representative identified as "Yongbin."[5] The TAC does not explain how Hounen came to contact Yongbin. In November 2019, parties interested in the potential deal, including Hounen and Da Chuan representatives, met with Yongbin. The Hounen representative explained the terms of its baseline agreement with Endepo and advised that meeting the Delivery Timeline was paramount. Hounen and Endepo would only issue purchase agreements with end customers if UL could authorize use of the UL mark by the Delivery Timeline. Hounen alleges that it asked UL to agree to meet the Delivery Timeline to obtain a reasonably certain estimate as to when the modules would arrive in the United States. Hounen sought UL's commitment to the Delivery Timeline so that Endepo could determine whether it could meet the end buyer's anticipated timeline. Although it was important to Hounen that UL certify the marks in a manner consistent with the Delivery Timeline to reduce the risk of impact to third parties, Hounen and Endepo did not intend to terminate the baseline agreement if certain shipments arrived in the United States after the Delivery Timeline.

Yongbin guaranteed that UL would authorize Hounen to use UL's mark in time to meet the Delivery Timeline. He estimated that the certification process would be complete by the time the modules reached the United States. But even if the certification process were not completed in time, UL would allow Hounen to use the mark. Yongbin explained that such preemptive authorization was common practice; as long as the certification process was ongoing and the requisite fees were paid, UL could authorize customers to use its mark to facilitate delivery deadlines. Further assuring Hounen, Yongbin explained that UL could provide a declaration confirming that the certification process was ongoing—which would serve as evidence of UL's permission for Hounen to use the mark—in the event of a problem with CBP. Satisfied with this guarantee, Hounen agreed to work with UL. Having secured a manufacturer, brand licenser, and certifier, Hounen and Endepo entered into purchase contracts specifying terms of delivery in December 2019 and January 2020.

As it happened, UL had not completed testing and certification by the time Da Chuan manufactured the first batch of modules and prepared them for shipment in January 2020. ReneSola coordinated with UL to send Da Chuan and Hounen the UL mark for placement on the modules. Consistent with Yongbin's representations that UL authorized use of its mark whether or not certification was complete, Hounen instructed Da Chuan to append the UL mark to the modules. Da Chuan shipped the first batch of modules to the United States in February 2020. Around the same time, Yongbin sent Hounen (by way of ReneSola) a declaration that bore UL-CCIC's seal and specified that "testing is ongoing." TAC ¶ 198, ECF No. 42. That declaration purported to serve as evidence that UL authorized Hounen to use the mark.[6]

---

[5] Elsewhere in the TAC, Yongbin is identified as an employee of UL-CCIC. TAC ¶ 192, ECF No. 42.

[6] In October 2020, Chinese investigators questioned Yongbin about his involvement in the certification of the modules at issue. During this interview, Yongbin admitted that UL-CCIC did not give him permission to send the February 2020 declaration, but that he had given similar declarations to other companies, including a company called Trina Solar, in the past.

Sure enough, CBP posed a problem for Hounen. CBP targeted the first shipment of the modules for examination on March 25, 2020 and detained the shipment in early April. When CBP asked UL to confirm that the modules were not counterfeit, UL stated that it was "highly suspicious of [their] authenticity." *Id.* ¶ 250. Meanwhile, Yongbin provided Da Chuan and Hounen with another "certificate of compliance" that purported to serve as evidence of UL's authorization. The Certificate also stated, however, that it "d[id] not provide authorization to apply the UL mark." April Certificate of Compliance, Ex. 20 to TAC, ECF No. 42-20.

At the end of April 2020, UL sent CBP a letter stating that the modules were not "authorized" and that UL did "not consent" to the importation of such unauthorized marks. TAC ¶ 260, ECF No. 42. CBP seized this first shipment in May 2020. CBP similarly detained and seized seven more module shipments between April and June 2020.

Hounen alleges that UL and ReneSola told Da Chuan that UL would only consent to the release of the seized modules if Da Chuan admitted it was at fault. Da Chuan allegedly sent UL a statement in which it admitted that it shipped the modules with UL's mark without authorization. Hounen further alleges that UL and ReneSola strongarmed Da Chuan in accepting responsibility by withholding consent to release the modules.

In August 2020, Hounen submitted petitions to CBP, seeking release of the seized modules. Through new counsel, Hounen resubmitted those petitions in January 2021. CBP denied Hounen's petitions in March 2021.

A month later, in April 2021, UL relayed to CBP its consent to release all of the seized modules. CBP eventually approved the release of the modules subject to the removal of the UL mark in August 2021. In its decision allowing remittance of the modules—which Hounen attached to the TAC—CBP cited Hounen's representations that Da Chuan "jumped the gun" in using UL's mark. 8/6/2021 CBP Decision re Petitions, ECF No. 42-22 at 8. According to the CBP petition, Hounen also claimed that it and "Da Chuan were inexperienced regarding UL certification" in seeking the release of the seized modules. *Id.*

By the time CBP released the modules, about two years had passed, and the modules had depreciated in value. Hounen never delivered the seized modules to Endepo or Solar PV, which in turn, could not deliver the modules to certain third-party buyers. In addition, Hounen paid CBP significant fines and penalties to obtain the release of the modules.

Hounen sued UL and ReneSola for damages resulting from the fines it paid CBP and the damages it owed Endepo for breach of contract. Hounen alleged that UL misled it in promising that it would authorize use of its mark, regardless of whether the mark passed certification, and Hounen relied on that misrepresentation to its detriment.

UL filed a motion to dismiss the Second Amended Complaint, which this Court granted without prejudice. This Court acknowledged that the Second Amended Complaint raised many factual questions that are inappropriate to resolve at this stage of litigation. But it concluded that Hounen pleaded itself out of court by alleging that UL did not cause its injury. In its Second Amended Complaint, Hounen framed the Delivery Timeline as essential to its contract with Endepo. Hounen's allegations established, however, that the modules were never going to be

delivered in that timeframe. CBP first targeted the module shipment fifteen days after the delivery deadline contemplated in the first purchase order and only contacted UL about the modules' authenticity after the final delivery deadline. Hounen's own allegations seemed to establish that delivery delay, rather than any of UL's alleged actions, caused the breach.

To cure these deficiencies, Hounen amended its complaint. In the TAC, Hounen clarified the nature of its injuries and the parties' understandings of the Delivery Timeline. According to Hounen, the Delivery Timeline was not as crucial to the parties' agreement as first alleged. Hounen alleges Endepo never terminated the first and second purchase orders and would have still accepted delivery of the modules even had they been late.

UL moves to dismiss again, arguing that Hounen has yet to allege that UL caused its injury. It also argues that Hounen has failed to state a claim for fraud or negligence under Illinois law.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Complaints alleging fraudulent conduct are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements, describing the "who, what, when, where, and how" of the fraud. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). Even when a complaint satisfies the pleading standards of the Federal Rules, however, a plaintiff may plead itself out of court "when the complaint includes 'facts that establish an impenetrable defense to its claims.'" *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016) (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)). On the other hand, Courts may not resolve factual disputes when evaluating complaints. *See Sobitan v. Glud*, 589 F.3d 379, 380 n.2 (7th Cir. 2009). Instead, when examining a plaintiff's allegations, the Court must follow "the unquestionable principle that the allegations of a complaint must be taken as true." *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chicago*, 45 F.3d 1144, 1154 (7th Cir. 1995).

### A. Proximate Cause

To state a claim for fraud, negligent misrepresentation, or negligence, Hounen must allege that UL's conduct proximately caused its injury. *Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶¶ 75, 88, 19 N.E.3d 1019, 1036, 1038; *Bell ex rel. St. v. Bakus*, 2014 IL App (1st) 131043, ¶ 22, 16 N.E.3d 819, 824.[7] A requirement of proximate cause under Illinois law is "cause in fact," which is present "when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Cochran v. Securitas Sec. Servs. USA, Inc.*, 2016 IL App (4th) 150791, ¶ 57, 59 N.E.3d 234, 249 (quotation omitted).[8] In the TAC, Hounen alleges that UL's conduct caused two injuries:

---

[7] The parties appear to continue to agree that their claims are substantively governed by Illinois law.

[8] The second component of proximate cause in Illinois is legal cause, which requires that "the injury [be] of a type that a reasonable person would see as a likely result of [defendant's] conduct." *Cochran*, 2016 IL App (4th) 150791, ¶ 58, 59 N.E.3d at 249-50 (quoting *Young v. Bryco*

(1) liability to Endepo and its other direct customer, Solar PV, for breach of any contract that provided for the sale of the seized modules and (2) the fines and penalties it had to pay to CBP for remittance of the seized modules. UL argues that Houen's own allegations fail to establish that its actions were a cause in fact of either harm. The Court examines each claimed injury in turn.

### 1. Breach of Contract Injury

As discussed, the Court previously dismissed Hounen's Second Amended Complaint because it identified liability for breach of contract with Endepo as the only source of its injury. And the SAC's allegations established that Houen would have breached an essential term of the agreement—the Delivery Timeline—independently of any of UL's actions. Houen appears to have addressed the Court's concerns.

In the TAC, Houen refines the nature of the injury that it alleges UL caused. Specifically, the TAC distinguishes between the consequences of delivering the modules outside of the Delivery Timeline and failing to deliver them at all. Houen alleges UL caused it to incur significant liability for failing to *ever* send any modules—*i.e.*, for materially breaching contracts with Endepo and its other direct customer, Solar PV—rather than fines it would have incurred for merely delivering the modules late. "[A] breach is 'material' [when] it is 'so substantial and fundamental as to defeat the objects of the parties in making the agreement, or [when] the failure to perform renders performance of the rest of the contract different in substance from the original agreement." *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 2012 IL App (1st) 092385, ¶ 43, 976 N.E.2d 1014, 1027 (quoting *Village of Fox Lake v. Aetna Casualty & Surety Co.,* 178 Ill.App.3d 887, 900–01, 534 N.E.2d 133 (1989)). Here, delivery of the modules late, but within a reasonable timeframe, would not defeat the purpose of the Hounen-Endepo agreement: to deliver modules to U.S. end buyers. Failure to deliver the modules at all would. By contemplating a discretionary penalty, rather than outright termination, as recourse for late delivery, the purchase orders reflected that reality.

The TAC also clarifies that the dates specified in the Delivery Timeline were relevant to, but not dispositive of the agreement between Houen and Endepo. Those allegations further support the plausible inference that late modules posed a minor problem and no modules at all a major one. Houen and Endepo's deal was contingent upon Houen's reaching an agreement on a reasonable delivery timeframe with a third-party certifier, but UL's failure to meet the specified timeline would not have caused Endepo or any of its buyers to terminate any contracts. The parties' alleged actions confirm the point: it was not until UL disclaimed authorization of Houen's use of its mark and CBP's seizure appeared indefinite that some of Endepo's end buyers terminated their agreements. At that juncture, months had passed from the contemplated deadline for the module delivery: two of Endepo's customers did not terminate their contracts until September and November 2020. In addition, the contract between Solar PV and Houen called for modules to arrive after the Delivery Timeline, and Solar PV agreed to accept modules even after CBP's initial seizure. The TAC's allegations therefore support an inference that Endepo and its customers did

---

*Arms*, 213 Ill.2d 433, 446-47, 821 N.E.2d 1078, 1086 (2004)). UL does not address legal cause and argues only that Houen has inadequately pleaded cause in fact.

not consider late delivery alone grounds for termination (or at least that they did not regard minor delay to be reason to terminate the contracts).

Taking Hounen's allegations in the TAC as true, they plausibly establish that UL's actions—specifically its actions in identifying the UL marks as counterfeit—caused CBP to detain Hounen's modules indefinitely. UL may not have caused any shipment delays that would trigger fines and penalties, but it did allegedly cause Hounen to ship the modules and CBP to seize them. With the addition of these refocused allegations, the Court finds it plausible to infer both that Hounen would convey to UL that meeting the Delivery Timeline was important (so that the modules would be delivered eventually) and that failing to meet the Delivery Timeline alone was not the principal cause of Hounen's injury.[9]

UL resists this conclusion. It reads the TAC as establishing that Hounen materially breached its contract with Endepo the minute the modules were delivered late. And because CBP's seizure of the modules did not cause the initial lateness, UL argues, Hounen does not allege that UL caused the injury. UL points to language in the purchase orders that supposedly rendered the Delivery Timeline critical: that the seller "shall be responsible" for delivering the modules and that it "must deliver the goods in accordance with the delivery dates agreed herein." But that language did not obligate the parties to terminate the contract if the delivery date was not met. The contracts' contemplated remedies were instead discretionary penalties. As Hounen points out, these stipulations for discretionary damages were reasonable: shipping delays frequently happen, especially in the internationally dominated solar panel industry. Unless time were of the essence for a particular project—and nothing in the purchase orders so specified—it would be unrealistic for a buyer to renege on an entire contract simply because the product did not arrive by a specified date. *See Chariot Holdings, Ltd. v. Eastmet Corp.*, 153 Ill. App. 3d 50, 58, 505 N.E.2d 1076, 1082 (1987) ("Under the law of Illinois, time requirements 'even when attached to explicit termination provisions . . . are by their nature accessory rather than central aspects of most contracts.'" (quoting *Sahadi v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 706 F.2d 193, 198 (7th Cir. 1983)). The plaintiff is entitled to all reasonable inferences in responding to a motion to dismiss, and here it is reasonable to infer that strict compliance with the delivery dates in the purchase orders was not deemed by the parties to be a material breach that terminated the orders.

UL further argues that Hounen's allegations are immaterial because Hounen seeks damages stemming from the breach without regard to the breach's nature or severity. But that argument misinterprets Hounen's allegations. UL assumes that any violation of the contract would have the same effect. If Hounen were seeking damages in the form of any and all penalties it owed Endepo

---

[9] This is so even considering Hounen's representation to UL that "Hounen and Endepo would not follow through on their baseline agreement if authorization to use the UL Mark by the Delivery Timeline was not possible." TAC ¶ 117, ECF No. 42. Contrary to UL's arguments, that statement was not necessarily a misrepresentation on Hounen's part. Its plausible to infer that, if delivery within the timeline were not even in the realm of possibility, Hounen and Endepo would be functionally left without a third-party certifier. But Hounen and Endepo could still go through with the deal if delivery within the timeline were possible, but not perfectly adhered to in practice. As Hounen explains, the Hounen-Endepo agreement was "*not* contingent on UL meeting the Delivery Timeline; rather the arrangement between Hounen and UL was contingent on UL *agreeing* to meet the Delivery Timeline." Opp. Br. at 2, ECF No. 47.

as a result of late delivery, it would not be able to establish proximate cause as to all such damages. Hounen insists, however, that it is seeking damages due to its inability to perform at all, an injury that is of a different magnitude. That distinction is material and is enough to establish cause in fact; Hounen plausibly alleges that UL caused the latter, rather than the former injury.

In its reply, UL switches gears unsuccessfully. Despite arguing in its opening brief that Hounen breached immediately upon late delivery of the modules to Endepo, in its reply brief UL disavows *any* breach or injury. According to UL, Hounen's allegations establish that UL did not injure Hounen at all because it did not breach any agreements. Setting potential waiver issues aside—*O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 971 (N.D. Ill. 2021) ("[A]rguments made for the first time in a reply brief are waived." (collecting cases))—UL's argument proves too much. Even though Hounen alleges that Endepo never terminated the purchase order with Hounen due to late delivery, it is plausible to infer that Hounen still breached the contract by failing to deliver the modules at all. Indeed, the TAC alleges Endepo's end customers eventually terminated their contracts. Hounen is therefore injured to the extent that it is liable to Endepo for Endepo's inability to deliver modules to its customers.

### 2. CBP Fines and Penalties

Hounen also alleges that UL's misrepresentations caused it to incur fines and penalties necessary to secure release of the modules from CBP. UL's inconsistent representations to Hounen and CBP influenced Hounen to ship the modules with an unauthorized mark and led CBP to continue to detain the modules once they were seized. Thus, Hounen was required to pay fines to CBP to secure release of the modules and mitigate its damages to end buyers. The Court finds that at the very least, Hounen alleges that UL played a "substantial role" in CBP's detention of the modules and Hounen's payment of penalties. *Cochran*, 2016 IL App (4th) 150791, ¶ 60, 59 N.E. at 250.

UL contends that Hounen's own allegations fail to establish proximate cause for two reasons. First, UL argues that CBP independently decided to seize the modules before any communications with UL. Second, it argues that Hounen admitted to CBP that Da Chuan, rather than UL, caused its injuries. Neither argument passes muster.

That CBP targeted the modules on its own accord does not absolve UL of liability. It is plausible to infer that if Yongbin had not misrepresented that UL would authorize use of the mark to CBP, Hounen would not have collaborated with UL and shipped the modules in the first place. "[W]hen . . . there are multiple factors that may have combined to cause the injury, [courts] ask whether defendant's conduct was a material element and a substantial factor in bringing about the injury." *Young v. Bryco Arms*, 213 Ill. 2d 433, 446, 821 N.E.2d 1078, 1086 (2004). UL may not have influenced CBP to target the modules initially, but its representations were a substantial factor in bringing about the shipment of modules CBP would later deem counterfeit.

Further, whatever CBP's initial reason for detaining the shipment, CBP would have released the modules had UL held to its representations and told CBP that it approved Hounen's use of the mark. As the trademark holder, UL exerts considerable influence on CBP's determination that a trademark has been violated. *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 186 (1988) ("The trademark owner has sole authority to decide that all products bearing its trademark

will enter [the United States] or that none will, and to decide what entity may import them, under what conditions, and for what purpose."). Indeed, CBP eventually released all the modules after obtaining UL's consent. Although, as UL notes, CBP took several months to do so, it is plausible to infer that UL's approval catalyzed the discharge process. UL may not have caused the delay in release, but its failure to authorize use of the modules did cause their continued seizure. Any fines and penalties that Hounen had to pay to release the modules are a plausible consequence of UL's alleged conduct.

Hounen's apparent representations to CBP in its petition to release the modules are also not dispositive. Hounen appended CBP's decision approving its petition to release the modules to the TAC. That decision incorporates Hounen's statements accepting responsibility for the infringement and blaming Da Chuan's "jump[ing] the gun" for the counterfeit marks. 8/6/2021 CBP Decision re Petitions, ECF No. 42-22 at 8. UL argues that Hounen has effectively pleaded itself out of court by appending the decision to its complaint. According to UL, the decision encompasses an admission that Da Chuan's haste, rather than UL's representations, caused the seizure. Hounen, however, alleges that UL and ReneSolar coerced Da Chuan into admitting responsibility for the incident to absolve Yongbin of responsibility and so that the modules could be released quickly. If true, it is also plausible that UL similarly coerced Hounen into accepting a level of responsibility to secure release. Factual questions remain regarding the veracity of Hounen's claims of coercion and the accuracy of CBP's portrayal of Hounen's representations (the petitions themselves are not included in the record). The Court cannot resolve those questions at this stage of litigation, and CBP's decision does not foreclose Hounen's claims.

In sum, Hounen has plausibly alleged that UL's misrepresentations caused the shipment of modules with unauthorized marks and that its further misrepresentations caused CBP to seize the modules. That seizure caused Hounen to materially breach its contracts with its customers and obligated Hounen to pay fines and penalties. Hounen has therefore plausibly claimed that UL proximately caused its injuries.

    **B.**    **Reasonable Reliance**

To establish a claim for fraud or negligent misrepresentation, Hounen must also show that it reasonably relied on the truth of UL's statements. *Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶¶ 71, 87, 19 N.E.3d 1019, 1036, 1038. "Under Illinois law, justifiable reliance exists when it was 'reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Hounen contends that it reasonably relied on the statements of UL's representative with knowledge of UL's opaque certification process when discussing the possibility of certification. The Court agrees. As discussed below, factual questions about the reasonableness of Hounen's reliance preclude dismissal at this stage.

Before contesting reasonableness, however, UL argues that Hounen's allegations establish that it did not rely on UL's statements at all. This is so, according to UL, because Hounen decided to pursue certification with UL before the November meeting. That reading of the TAC ignores a critical part of Hounen's allegations: that Hounen and Endepo "decided to pursue UL as a ***potential*** third-party certification company" in 2019. TAC ¶ 84, ECF No. 42 (emphasis added). Only after Yongbin's guarantees did Hounen and Endepo choose UL as the third-party certifier. *See id.* ¶ 133

("Hounen agreed to use UL as the third-party certifier based on Hounen's knowledge of UL Expansion, UL's marketing materials, UL's prior business relationship with ReneSola, and ***Yongbin's representations***[.]"(emphasis added)). Hounen repeatedly and emphatically alleges that it relied on Yongbin's statements; the only question is whether that reliance was reasonable in light of the facts alleged.

UL answers that it was not, given that UL's entire business model centered around certifying products once testing was complete. The Court takes UL's point as a matter of logic, but in the end, factual uncertainty remains regarding the reasonableness of Hounen's reliance. The TAC plausibly explains why Hounen may have been justified in relying on the representations of a "UL representative," Yongbin, about the requirements and practical operation of the certification process. UL internally controls its certification process, which "varies by each individual project" and unilaterally decides what it means to "obtain authorization" to use the mark. *Id.* ¶ 21-22. Yongbin told Hounen that authorizing use of a mark before certification was complete was common practice, and Hounen alleges that UL engaged in similar pre-testing certification with a different company.[10] In that light, it would not necessarily be unreasonable to credit assurances that UL would modify and streamline its proprietary certification process to accommodate a tight timetable of an important customer. When UL's representative advised that "UL allowed field testing of products already using the UL Mark that would act as a retroactive type of certification," *id.* ¶ 122, Hounen had no contrary information. The Certificates of Compliance and Declaration that Yongbin provided did, to be sure, stop short of providing authorization to apply the UL mark, but the Court cannot say on this record that Yongbin's assurances were beyond the pale. Of course, discovery could reveal that the practice of authorization before testing was uncommon or frowned upon in the industry and that Hounen seized on a deal that it knew was too good to be true. For now, however, whether Hounen's reliance was reasonable depends on facts that have not yet been fleshed out.

Finally, UL protests that Hounen could not have relied on any statements that UL made to CBP. To be sure, Hounen was not privy to UL's representations to CBP that the modules were counterfeit. But Hounen does not allege that it relied upon those representations. Instead, UL's statements to CBP were allegedly part and parcel of UL's overall misrepresentation: Yongbin's alleged knowledge that UL was always going to tell CBP that the marks were counterfeit is what made his prior statements deliberate falsehoods. *See Wigod*, 673 F.3d at 570 (noting that a "particularly egregious" false statement of intent regarding future conduct can form basis of a fraudulent misrepresentation cause of action under Illinois law (quoting *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011))). Hounen alleged that it relied on Yongbin's representations (which UL sanctioned), that those representations were false ***because*** UL had no intention of authorizing the use of its certification mark on an untested product, and that this fundamental misrepresentation caused Hounen injury.

---

[10] UL points out that Hounen did not allege that it knew about UL's previous practice of preemptive authorization at the time that it chose UL as a certifier. Even disregarding Hounen's knowledge or lack thereof, however, that UL previously engaged in similar conduct without a hitch can shed light on what is considered normal or reasonable in the industry.

10

C. **Duty of Care**

UL also argues that Hounen's claims fail to support a negligence theory because it did not owe Hounen a duty of care. Hounen relies on the same claims, or the same "aggregate of operative facts," to support its fraud, negligent misrepresentation, and negligence counts. *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (quoting *Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011)). These are merely alternative legal theories offered in support of the same claim, however; "[o]ne claim supported by multiple theories does not somehow become multiple claims." *Id.* Having found that Hounen has stated a plausible claim based on a fraud theory, it is unnecessary to determine whether another theory is also sufficient. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). The TAC does, so it survives dismissal even if a negligence theory proves inadequate. The Court therefore declines to determine at this stage whether UL owed Hounen a duty of care.

\* \* \*

The Court concludes that Hounen has resolved the deficiencies that it identified in its previous Order; Hounen has plausibly alleged that UL proximately caused its injuries. The TAC also raises factual questions that must be resolved at summary judgment or trial, on the basis of evidence developed during discovery. Accordingly, the Court denies UL's motion to dismiss.

Dated: August 3, 2023

John J. Tharp, Jr.
United States District Judge

11